3   219
140~   7

CHARLES H. HICKS et al., of the National Mining Company, Respondents, *v.* V. G. BELL et al., of the Rockville Mining Company, Appellants.

Actual possession of a portion of a mining claim, according to the custom of miners, in a given locality on the Yuba River, extends by construction to the limits of the claim, held in accordance with such customs. '

The jurisdiction of the District Court is confirmed and defined by the constitution, and no statute can deprive it of its powers.

Although the jurisdiction of mining claims is given to Justices of the Peace, that of the District Court remains unaffected, if the amount in controversy exceeds $200.

The United States, as owner of land within the limits of a State, only occupies the position of any private proprietor, with the exception of exemption from State taxation.

The mines of gold and silver in the public lands are as much the property of the State, by virtue of her sovereignty, as are similar mines in the hands of private proprietors.

The State, therefore, has the sole right to authorize them to be worked, to pass laws for their regulation, to license miners, and to affix such terms and conditions as she may deem proper to the freedom of their use.

APPEAL from the Tenth Judicial District, for Yuba County.

The complainants, styling themselves members of the National Mining Company, state that, on the 27th of July, 1852, and for two years previous, they were owners of a certain mining claim, situated in the bed of Yuba River, beginning at the mouth of Deer Creek and extending two hundred yards down said river, including the bed of the same, and that said claim was held by the said plaintiffs " according to the rules and customs of miners

in the immediate vicinity of said river mining claim," and was worked by them during the mining season of 1851, and also the mining season of 1852, so far as the said season has continued, up to the period of the commencement of this suit. That the defendants as well as H. Hitchcock,       Martin, and others, unknown, members of the Rockville Company, did on the 27th of July take possession of and work upon about ninety feet of the upper portion of the said claim; and do now, contrary to the rights of your complainants, after being fully advised of the same, work upon the said claim to the extent of said ninety feet; and complainants say that said ninety feet is worth $5000. That defendants well knew that plaintiffs were the first and lawful owners of said claim, and although repeatedly notified to leave the same, and though possession thereof was demanded by plaintiffs, defendants had refused to surrender the same. The plaintiffs therefore pray for damages, &c., and to be placed in possession of the premises, and for further relief, &c.

The answer of the defendants denies the whole of the allegations of the complaint, and aver that, excepting Davis, Hicknor, and others, named by plaintiff, according to the rules, regulations, laws, and customs, in force upon the said Yuba River in the immediate vicinity of said mining grounds, the said Rockville Mining Company, to wit, the said defendants (except as above) are the rightful owners of the said ninety feet of mining ground in dispute, and are in the rightful possession of the same.

A jury was sworn in the case, and the plaintiffs called J. Hebbard, who proved that, in the spring of 1852, the witness, " had seen a notice stuck upon the ground claimed, and now in dispute, from the plaintiffs; which afterwards did not appear on the ground and was lost." Thereupon the plaintiffs presented a paper, purporting to be a copy of the original notice of which witness had testified, and offered to read it to the jury, the object being to establish the plaintiffs' right, under the mining rules and regulations, to the premises in controversy. Defendants objected to the paper, but the court overruled the objection, and defendants excepted; the paper, however, it appears was not read to the jury.

The plaintiffs then offered to prove that a certain portion of said mining claim in controversy had been worked. The defen-

dants objected to the offer, on the ground that the proof should only apply to the particular part of the claim now in dispute. The court overruled the objection, and remarked that, it judicially knew that such was the general custom throughout the country, in relation to the working of the mines, and had been so repeatedly ruled by the courts of the State. To which judgment and ruling defendants excepted.

The plaintiffs then asked a witness if he knew of any arrangement or understanding between the plaintiffs' Company and any other Company, by which they were to join ditches, so as to enable the plaintiffs to work the upper part of their claim. Defendants objected, but the court permitted the question to be asked, and defendants excepted. After the plaintiffs had proved that there were written laws and regulations, which governed the mines, and which were observed at that point on the Yuba River where the claim in dispute is located, and after they had proved that a written instrument containing these laws and regulations had been in the hands of one J. B. Mulford, as the original, and was partly lost, which instrument the said Mulford had once heard proven as the original, in a legal investigation and by competent witnesses, the plaintiffs offered to read to the jury, as the laws and customs governing the mines and miners where the claim in dispute is located, a copy of said instrument or written laws and regulations so proven to be lost, the said copy agreeing when compared with that portion of said written laws that was proven and preserved as aforesaid ; to which offer defendants objected, and the court admitted it. Defendants excepted ; the copy, however, was not read.

The statement then proceeds to say, that the proofs on the part of the plaintiffs, when fully heard and closed, showed and established that the premises in dispute, as set out in the complaint, were a part of the Yuba River, below water mark, and of which neither the plaintiffs nor the defendants had ever been in actual possession, except that the plaintiffs had been in possession of the bed of the river below the line of the premises in dispute, and claimed that the premises in dispute being a part of the original claim, that therefore they were in possession of the whole, under the rules and customs of miners ; and that the waters then over-

flowing had not at any time been either disturbed, molested, or changed by defendants; and that the premises in controversy are lands, the fee of which is in the United States of America, and the premises have never been let to the plaintiffs.

On these grounds, and on the further ground that the District Court has no original jurisdiction, defendants moved for judgment of nonsuit against the plaintiffs, which the court overruled.

The jury found for the plaintiffs; and the court ordered judgment for plaintiffs that they have and recover from the defendants the possession of the premises in the plaintiffs' complaint mentioned, and that they have a writ of restitution therefor, with costs, &c.                                Defendants appealed.

[The reporter has given the foregoing statement of the evidence and proceedings in the case, without much abridgment, and pretty much in the language of the record.]

*Dunn* and *Field*, for appellants.

The court erred in refusing the nonsuit on the ground that it had no jurisdiction.    By statute, actions concerning mining claims can only be brought in a Justice's Court.  Prac. Act, sect. 621–23.

The premises belong to the United States, and the United States never having sanctioned any entry upon them, all provisions of law in relation thereto must be regarded as police regulations, and be strictly pursued: United States *v.* Gear, 3 How. U. S. Rep.; and therefore the District Court can take no jurisdiction by virtue of its general powers.

The proof showed that defendants never had been in possession of the premises in dispute, and had never molested the plaintiffs, and the allegation of possession was therefore unfounded, the contrary being shown by the evidence.   The same sentences in the answer which allege ownership and possession in defendants, allege that the same was *rightfully* in them; the plaintiffs cannot use these allegations to give jurisdiction and reject them on the merits of the case.

The proof showed that the plaintiffs had never been in actual possession; and whatever rights exist with regard to it, can only

be of a possessory character, for it is admitted that the claim is on land of the United States. Possession is only *prima facie* evidence of title, and as this is rebutted in this case, plaintiff's claim must be limited to his *actual* possession. But he claims constructive possession by the rules and customs of miners. Of these rules there was no proof, and the only proof given to the jury was what the court undertook to give judicially. These rules are varied with every locality, and no Judge càn know them judicially.

The claim of plaintiffs was taken up in 1850, and yet the ground in dispute had never been touched or occupied since. To permit the holding of a claim so long a period unworked and unoccupied, is against the whole policy of the law.

*C. W. Bryan,* for respondent.

It is not required that the proof of the extent of the claim shall be confined to the identical land worked—no custom can be made to apply to such a rule. Possession of a portion of land, where it is defined by limits, is possession of the whole, subject to the controlling custom of the mines, and the proof must be left to the jury. Smith *v.* Young, 2 Barb. N. Y. S. C. Rep. 545; 6 Peters, 598.

Presumptions from evidence of the existence of particular facts are in many cases, *if not in all,* mixed questions of law and fact. Bank U. S. *v.* Corcoran, 2 Peters, 133.

The proof of an agreement with a party foreign to the record, regarding the ditch, was admissible to show the faith of the parties in their continued occupation. 1 Gr. Ev. 67, 68; 2 Pet. 133.

The original of the mining laws was proved to be lost; a copy was therefore evidence. 9 Wheat. 483; 2 Barb. S. C. Rep. 545; This copy was *examined.*

If the General Government does own the fee in the lands, yet the State has power to regulate the police of the mines within its limits, in like manner as they may prescribe the mode of acquiring possession of farming lands. The State has taxed the property of the mines, and has derived revenue from it. Is not this right of taxation, and that of property, inseparable?

The proof is, that the plaintiffs were in possession by defined limits, and when about to join ditches with another, so as to bring the whole claim into working condition, that defendants entered upon it.

The District Court has jurisdiction in all civil cases in law and in equity, where the amount exceeds $200. This is a civil action, and the value in dispute above the amount necessary to confer jurisdiction. The act extending the jurisdiction of Justices of the Peace does not limit or exclude that of the District Court, which is a court of general powers.

HEYDENFELDT, Justice, delivered the opinion of the court. WELLS, Justice, concurred.

The objection that the record discloses that there was no actual possession, is not good, because it appears there was actual possession of a portion adjacent to the premises in dispute, and, as I understand it, constructive possession of the latter was claimed by the rules and customs of miners on that part of the river. Nor can it be determined that the jury were not properly informed as to what were these rules. The bill of exceptions does not pretend to set out all that occurred on the trial, but only such incidents as were subjects of dispute and exception.

The jurisdiction of the District Court is conferred and defined by the Constitution, and no statute can deprive it of its powers. Although the jurisdiction of mining claims is given to the Justices of the Peace, that of the District Court remains unaffected, if the amount in controversy exceeds two hundred dollars.

The main reliance in this case of the appellants is, that the land in question is the public land of the United States, and therefore the statutes of this State, which recognize the possessions of miners, which provide for their protection, and require mining claims to be decided according to the rules and regulations of bodies of miners, at each particular mining locality, are mere police regulations, and are invalid to confer any right, such as that of possession, or to enable the recovery thereof.

This position involves the decision of the question, to whom do the mines of gold and silver belong? To arrive at a satisfactory

solution, it is only necessary to examine a few of the leading authorities.

According to the common law of England, mines of silver and gold are termed royal mines, and are the exclusive property of the Crown.

Blackstone says, vol. 1, p. 294: "A twelfth branch of the royal revenue, the right to mines, has its original from the king's prerogative of coinage, in order to supply him with materials, and therefore those mines which are properly royal, and to which the king is entitled, when found, are only those of silver and gold. By the old common law, if gold or silver be found in mines of base metal, according to the opinion of some, the whole was a royal mine, and belonged to the king." And he cites 2 Just. 577.

In the case of The Queen and the Earl of Northumberland, cited from Plowden, it was decided that although the king grant lands and the mines which are in them, yet royal mines will not pass by so general a description.

It was further explicitly decided, in the same case, that all mines of gold and silver within the realm, though in the lands of subjects, belong to the crown; and this right is accompanied with full liberty to dig, and carry away the ores, and with all such incidents thereto, as are necessary to be used for getting them.

This case has never been overruled, and stands as the accepted exposition of the common law. For although Lord HARDWICKE, in the case of Siddal *v.* Weston, 2 Atk. 20, seems to confine the royal right of entry to cases where the mine had already been opened, yet he does not question the royal ownership, and seems finally to decide the case upon a different reason. Even, however, his slight departure from the doctrine of the case in Plowden, was subsequently disapproved and doubted as authority by Sir WM. GRANT, Master of the Rolls, in the case of Seaman *v.* Vaudrey, 16 Vesey, 393.

The rule, therefore, as laid down in the case from Plowden, may be considered as uncontradicted, and has the solemn sanction of being the concurrent decision of all twelve of the judges.

Blackstone, it will be seen, attributes the origin of the law to

15

the right of coinage.   Plowden says, that the reason is because gold and silver are most excellent things, and the law has appointed them to the person who is most excellent, and that was the king.   It is, however, immaterial as to the reason for its origin; the law has been settled beyond question, as it is declared by the earliest and most distinguished judges, and to this time has never been disputed.   See Bambridge on the Law of Mines and Minerals, where the authorities are collected.

This doctrine of the law has been acted upon in some, and probably in many, of the States in the Union.   In Pennsylvania, it was the subject of legislation as early as 1787.   In that year, by an act establishing a land office, she reserves for the use of the Commonwealth, one-fifth of all gold and silver ore. See Dunlap's Laws of Pennsylvania.

In New York, as early as 1789, an act of the legislature was passed, exempting the discoverers of gold and silver mines from paying to the people of the State as sovereign thereof, any portion or dividend of the yield, for the space of 21 years from the time of giving notice of the discovery; and forbidding the working of the same after the expiration of that term.   See 1 Laws of New York, 124.

Again, in 1827, another act was passed, which declares that all mines of gold and silver discovered, or hereafter to be discovered, within this State, shall be the property of the people of this State, in their right of sovereignty.   See 1 Revised Statutes, 281.

This was in effect but a re-enactment of the common law, which vested the right in the State government as the successor of the king.

It is hardly necessary at this period of our history, to make an argument to prove that the several States of the Union, in virtue of their respective sovereignties, are entitled to the jura regalia which pertained to the king at common law.

An analogous question to the one under consideration was fully discussed in the Supreme Court of the United States, in the case of Powland's lessee v. Hagan, 3 Howard.   It was there held, in the case of a new State, that she was admitted into the Union upon the same footing as the original States, and pos-

sessed the right of eminent domain.   Numerous other cases can be cited in which the decisions are uniform, that the United States has no municipal sovereignty within the limits of the States.

In reference to the ownership of the public lands, the United States only occupied the position of any private proprietor, with the exception of an express exemption from State taxation. The mines of gold and silver on the public lands are as much the property of this State, by virtue of her sovereignty, as are similar mines in the lands of private citizens.   She has, therefore, solely the right to authorize them to be worked ; to pass laws for their regulation; to license miners; and to affix such terms and conditions as she may deem proper, to the freedom of their use.   In her legislation upon this subject, she has established the policy of permitting all who desire it, to work her mines of gold and silver, with or without conditions; and she has wisely provided that their conflicting claims shall be adjudicated by the rules and customs which may be established by bodies of them working in the same vicinity.

According to this enactment, the case under consideration has been tried and decided, and for aught that is disclosed by the record, the decision is consonant with right and justice.

Judgment is affirmed.