[S. F. No. 3538. In Bank.—August 14, 1903.]

E. O. BURNS, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

DEPOSITION—SUBPŒNA OF NOTARY PUBLIC—CONTEMPT OF COURT—CASE OVERRULED.—The superior court in which an action is pending has jurisdiction, upon a proper showing by affidavit, to punish as a contempt the disobedience of a witness to the subpœna of a notary public requiring him to attend and give his deposition to be used as evidence in such action. The case of *Lezinsky* v. *Superior Court*, 72 Cal. 510, overruled, in so far as holding to the contrary. [Angellotti, J., McFarland, J., and Lorigan, J., dissenting.]

ID.—PREVIOUS ORDER OF COURT—OBLIGATION OF WITNESS.—The previous order of the court requiring the witness to attend in obedience to the subpœna of a notary adds nothing to the legal obligation of the witness to obey the notary's subpœna, where the action is in a court of this state.

ID.—INHERENT POWER OF COURT.—Aside from statutory authority, a court of general jurisdiction has inherent power to punish for contempt persons who obstruct or interfere with the proceedings.

ID.—CONSTRUCTION OF CODE—"PROCEEDINGS OF COURT"—DEPOSITION OF WITNESS.—The ninth clause of section 1209 of the Code of Civil Procedure is intended to invest the superior court with power to prevent interference with any and all proceedings taken by the court or agencies acting in its behalf; and the word "proceedings" used therein should be given a meaning broad enough to embrace its intended purpose, and to include the taking of the deposition of a witness to be used in an action as a "proceeding of the court" in that action.

CERTIORARI to review the action of the Superior Court of the City and County of San Francisco in proceedings for contempt. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

H. G. Sieberst, for Petitioner.

J. S. Reid, for Respondent.

SHAW, J.—This is a proceeding in *certiorari,* to review an order of the superior court of the city and county of San Francisco, adjudging the petitioner guilty of contempt.

A writ of review can only be granted when the court or tribunal to which it is directed has exceeded its jurisdiction. (Code Civ. Proc., sec. 1068.) In a proceeding for contempt not committed in the immediate view and presence of the court, the superior court has jurisdiction to proceed when an affidavit stating the facts constituting the alleged contempt has been filed, and it appears that the facts charged do, in law, constitute a contempt. (Code Civ. Proc., sec. 1211.) In this case an affidavit was filed, the subsequent proceedings were regular, and the sole question presented is whether or not the facts stated in the affidavit constitute in law a contempt of the court.

It is alleged that an action entitled "Union Collection Company *v.* Commercial Fire Dispatch Company," for the recovery of the sum of five thousand dollars, was pending in the said superior court of the city and county of San Francisco; that the plaintiff therein made the necessary affidavit and gave due notice in said action that on a certain day it proposed to take the testimony of the petitioner by deposition before A. J. Henry, a notary public; that in pursuance of said notice the notary issued and caused to be served on petitioner a subpœna requiring his attendance at the time named, for the purpose of giving his deposition in said cause; that in addition to the service of the subpœna the plaintiff obtained from the said court an order in said cause directing the petitioner to appear and testify under oath before the notary, in obedience to the subpœna, and caused the order also to be served on the petitioner, but that the petitioner refused to obey the subpœna or the said order of the court, and failed and refused to appear before the notary, or to give his deposition as required by the subpœna and order.

That part of the affidavit relating to the making of an order by the court requiring the witness to attend before the

notary may be disregarded.  According to the view we take
of the case, although the court, under its general powers, may
have had authority to make such an order, still it would not
be necessary for it to do so, and the making of it in advance
would not add to the legal obligation of the plaintiff to obey
the subpœna.  Counsel for the respondent attempt to justify
the order under section 2036 of the Code of Civil Procedure.
By reference to the section preceding, it will be seen that
section 2036 applies only to proceedings to take depositions
to be used in the trial of actions pending in a sister state.
This was an action in a court of this state, and in such actions
that section furnishes no authority for an order of this char-
acter.

The question is whether or not the superior court in which
an action is pending has authority to punish for contempt a
witness who refuses to obey the subpœna of a notary, issued
in pursuance of regular proceedings under the code, for the
taking of his deposition to be used as evidence in the pending
cause.  This question was decided in the negative in *Lezinsky*
v. *Superior Court*, 72 Cal. 510.  There can be no doubt but
that that decision has been the occasion for great and numer-
ous obstructions to the proceedings of our trial courts in the
administration of justice.  That it has not met with the
approval of the profession is manifested by the frequent
attempts which have come to the notice of this court to com-
pel obedience by resort to other methods.  The effect of such
a rule is, that the power of a court to *compel* a witness to
testify is limited to those cases where he is required to be
personally present at the trial.  In the matter of giving his
deposition a witness may exercise his own pleasure, and may
obey or disobey the subpœna of the examining officer, as his
convenience or inclination may dictate.  The subpœna, which,
by its express language, and by the very etymology of the
word itself, signifies an order with a penalty for disobedience,
becomes, in such a case, of no greater potency or significance
than a mere notice.  And we have also this singular anomaly:
that by virtue of the provisions of sections 2035 to 2038 of
the Code of Civil Procedure, inclusive, the superior court has
power to require a witness to appear and testify by way of
deposition, to be used in any case pending in a sister state,
and to punish him for disobedience of its orders made to that

effect, but it has no such power to procure evidence for use in its own forum. The state exercises greater power out of comity to sister states than it allows to its own courts for the administration of justice to its own citizens. And the right of the superior court to exercise and enforce the well-known power of courts of equity to take evidence by deposition is at an end because no statute has been enacted expressly conferring the power. As the want of power becomes better known the evils increase. It is not to be assumed as probable that such startling results were contemplated by the legislators. . They furnish good ground for a reconsideration of the question.

Aside from statutory authority, it is a well-known principle of jurisprudence that every court of general jurisdiction has inherent power to punish for contempt persons who obstruct or interfere with its proceedings. (*Ex parte Terry,* 128 U. S. 303; *People* v. *Turner,* 1 Cal. 152; *People* v. *Durrant,* 116 Cal. 209; 7 Am. & Eng. Ency. of Law, 2d ed., p. 30, and numerous cases cited.) "The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings and the enforcement of judgments, orders, and writs of the court." (*Ex parte Robinson,* 19 Wall. 505.) "The power to punish for a contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied, because it is necessary to the exercise of all other powers." (*Cooper's Case,* 32 Vt. 253.) It follows from this principle that the source of the power of the superior court to punish for contempt is not statutory. It is derived from the constitution which created the court, and thereby invested it with all the powers incidental to courts of common law and courts of equity, of which it is the successor.

It is not necessary here to decide whether or not the legislature, can abridge those powers. If the legislative action on the subject omits any branch or feature of the power existing inherently in the court, it does not follow that such power has ceased, nor that it is taken away. It would still remain as a part of the powers given by the constitution.

The legislative action on the subject is found in section 1209 of the Code of Civil Procedure. The following provis-

ions of that section may be considered as applicable to the present case: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: . . . 5. Disobedience of any lawful judgment, order, or process of the court; . . . 9. Any other unlawful interference with the process or proceedings of a court; 10. Disobedience of a subpœna duly served, or refusing to be sworn or answer as a witness."

The conduct of the petitioner, Burns, in refusing to obey the subpœna issued by the notary, and in willfully refusing to attend at the time and place fixed for the taking of the deposition, was an interference with the proceeding for the taking of the deposition, and, if he was lawfully required to attend, it was clearly an unlawful interference with that proceeding. The decision of the case, therefore, depends on the question whether or not the taking of a deposition in an action pending in the superior court for the purpose of procuring evidence to be used in that action is, in any proper sense, *a proceeding of the court* in which the action is pending. If it is such a proceeding, then the petitioner has unlawfully interfered with its accomplishment, within the meaning of the provisions of section 1209, above quoted. Or, if that section does not apply, then, by virtue of its inherent power to enforce compliance with its proceedings in the due administration of justice, the court has power to punish such interference as a contempt.

The word "proceeding" necessarily has different meanings, according to the context and the subject to which it relates. In section 4191 of the Political Code, requiring the coroner to execute process in all proceedings to which the sheriff is a party, it is used in a somewhat limited sense, and is held to include "all steps taken and all things done wherein judicial procedure is instituted or judicial action invoked." (*Bruner* v. *Superior Court*, 92 Cal. 248.) In section 473 of the Code of Civil Procedure, and in similar statutory provisions of other states, it has a broader signification, and includes any step taken in a case, whether by the court or by one of the parties thereto. (*Stonesifer* v. *Kilburn*, 94 Cal. 43; *Lukes* v. *Logan*, 66 Cal. 33; *Johnson* v. *Jones*, 2 Neb. 137; *Wilson* v. *Macklin*, 7 Neb. 52; *Wilson* v. *Allen*, 3 How. Pr. 371; *Ir-*

*win* v. *Bank,* 6 Ohio St. 87; *Langstaff* v. *Miles,* 5 Mont. 555; *State* v. *Russell,* 17 Neb. 203.) "In its more general sense, in law, it means all the steps or measures adopted in the prosecution or defense of an action." (*Morewood* v. *Hollister,* 6 N. Y. 319; *Wilson* v. *Macklin,* 7 Neb. 52.) In Anderson's Law Dictionary, page 816, it is defined thus: "A proceeding in court is an act done by the authority or direction of the court, express or implied."

One of the powers necessary to the administration of justice is the power to obtain evidence upon which the judgment of the court can be exercised. Mr. Greenleaf, speaking of the law courts, says: "Every court having power definitively to hear and determine any suit has, by the common law, inherent power to call for all adequate proofs of the fact in controversy, and to that end summon and compel the attendance of witnesses before it." (1 Greenleaf on Evidence, sec. 309.) In *Amey* v. *Long,* 9 East, 473, Lord Ellenborough said: "The right to resort to means competent to compel the production of oral and written testimony is essential to the very existence and constitution of a court of law, since it receives and acts upon both descriptions of evidence, and cannot proceed with due effect without them." As above stated, the superior court is the successor, not only of the courts of law, but also of the courts of equity, and consequently this inherent power embraces not only those incident to the common-law courts, but also those possessed by the court of chancery in England. (*People* v. *Davidson,* 30 Cal. 391.)

Blackstone mentions as one of the defects in the administration of justice in the common-law courts the want of power to examine witnesses abroad, or who are about to go abroad to remain until after the trial, and says that such evidence could be obtained by the law courts only through the channel of a court of equity, and by means of an independent proceeding.

In courts of equity, however, the conditions were radically different. Originally, in those courts (and the same is true, even to this day, in many jurisdictions) there was no mode of proceeding whereby the testimony of witnesses could be obtained or produced at the trial, except by the taking of depositions. For that purpose, a commissioner, usually

styled an "examiner," was appointed by the court to take
the answers of the witnesses to certain interrogatories settled
by the court. The witnesses were compelled by subpœna to
attend and submit to the examination. (3 Blackstone's Com-
mentaries, 449.) Disobedience of the subpœna was a con-
tempt (Ibid. 443,) punishable by imprisonment until he
performed the act commanded therein. (Ibid. 444.) The
subpœna was issued by the court, not by the examiner.
(Daniell's Chancery Practice, pp. 906, 907.) If the witness
refused to attend, or if upon attending he refused to be sworn
or testify, the examiner certified the fact to the court, and
upon the certificate the court, upon application, would make
an order requiring him to attend and be sworn and examined.
If he still refused, he would be imprisoned, not only until he
was examined, but also until he had paid the costs occasioned
by his contumacy. (Daniell's Chancery Practice, pp. 908,
909.) The matter of the taking of depositions was one of
the ordinary and most frequent proceedings of a court of
equity, and the practice was controlled by the rules of court.
(Daniell's Chancery Practice, pp. 885, 888.)

It has been said that the jurisdiction of courts of equity,
having been given to the superior courts by the constitution,
cannot be taken away by statute. (*Tulare* v. *Hevren,* 126 Cal.
228; *Hicks* v. *Bell,* 3 Cal. 219; *Willis* v. *Farley,* 24 Cal. 500.)
The same rule would seem to apply to the powers necessary to
the exercise of this jurisdiction. From this it would follow
that the superior court, being a court of general jurisdiction,
in equity as well as at law, in the absence of any statute, must
possess all the powers necessary to compel the production of
evidence for use in cases tried before it that were possessed
by courts of equity from time immemorial, including the
power to provide for the taking of depositions, and for the
enforcement of proceedings to that end by punishment for
contempt. But it is not necessary to go so far. For whether
the statute can take from the court its necessary powers or
not, it will be admitted that the mere course of procedure by
which those powers are made effective, the regulation of the
practice and the furnishing of officers of law who shall exe-
cute the powers, are matters clearly within the province of
the legislature; and since the courts are bound to presume

that the legislature did not intend to go beyond its authority, and must, if possible, give statutes a construction which will render them constitutional, it follows that if there is any provision of the code which upon cursory examination might seem to have the effect of depriving the superior court of some of its powers in this respect, but which can be reasonably construed as intended merely to substitute a different practice and different officers for the exercise of the power, that construction should be adopted.

Turning now to the statute, we find that the means and manner of producing evidence, both by the actual presence and testimony of witnesses in open court and by the taking of depositions, which latter mode corresponds to the method of courts of equity, are provided in chapters II and III, title III, part IV of the Code of Civil Procedure. With respect to depositions, these chapters declare that they may be taken in an action or special proceeding (sec. 2020); that this may be done when it is shown by affidavit that the witness is a party, or that he resides out of the county, or is about to leave the county to remain until after the trial, or that he is too infirm to attend, or is the only witness to a material fact, or that it is a case where oral examination is not required by law (secs. 2021, 2031); that it may be taken before a "judge or other officer authorized to administer oaths," and notice must be given to the adverse party of the time and place (sec. 2031); that either party may attend and examine the witness; and that when so taken and properly certified the deposition may be used at the trial by either party upon certain conditions. (Secs. 2032, 2033, 2034.) A subpœna to require the attendance of the witness before the officer may be issued by the officer who is to take the depositions (sec. 1896, subd. 2), and the witness, if within thirty miles, must attend, even if he is without the county (sec. 1989); and a refusal to be sworn as a witness, or to answer questions, may be punished as a contempt. (Sec. 1991.) More minute directions are given which it is not necessary to mention.

Here we have a system of procedure for the taking of depositions of witnesses to be used as evidence in the courts of this state similar in all essential particulars to the method formerly in use in courts of equity. The differences are

neither important nor significant. Instead of requiring a court order (always given as of course), and leaving the appointment of the examiner to the court, the law authorizes depositions, alike in law as in equity, and itself provides the examiners, by giving that authority to any officer authorized to administer oaths; that is, in effect, constituting such officers *ex officio* officers of the court for the purpose of taking such depositions as they may be called upon to take. Instead of reserving to the court the power to issue the subpœna, the law invests that authority in the officer who is to act. It will be noticed that the plan includes all causes for which depositions were formerly authorized in equity practice.

The entire proceeding is merely a means furnished by law for the use of the court for the purpose of enabling it to obtain the evidence which may be found necessary to establish the truth of the facts in issue, and therefrom to determine the rights of the respective parties, and to administer justice accordingly. It is obviously a substitute for the procedure of the courts of chancery. The object is the same, and the procedure is substantially the same. The officer taking the deposition, although he derives his authority primarily from the law, and not from the court, does not act independently of the court. He cannot proceed of his own motion, or upon the mere request of any person, to take a deposition, regardless of the court or of any action pending. He can act only in pursuance of an affidavit made and notice given in an action pending in a court, a notice given by a party to the suit or his attorney, which affidavit and notice confessedly are proceedings in the action.

The taking of a deposition is as clearly one of the "proceedings" of the court as was the taking of testimony before the master or examiner in a suit in equity.

The provisions of section 1209, like those of other parts of the code, are "to be liberally construed with a view to effect its objects and to promote justice." (Code Civ. Proc., sec. 4.) The object of the ninth clause of the section was to invest the court with power to prevent interference with any and all proceedings taken in any action, by the court, or its duly authorized agencies acting in its behalf, and thereby to enable it the more efficiently to carry out its functions of doing jus-

tice in the trial and decision of causes pending before it.
The word "proceedings," as used in subdivision 9, should
therefore be given a meaning broad enough to embrace the
purposes which it was designed to effect. The taking of a
deposition is one of the most efficient and necessary proceed-
ings known to the law in aid of the court and in furtherance
of the ends for which the court was created. A construction
which would deprive the court of the power to punish inter-
ference with its proceedings, which would take from the court
its inherent power to compel the production of evidence
necessary to the decision of causes, and substitute a system
which would leave the ability to secure the evidence required
for a just and proper decision to depend upon the voluntary
submission of unwilling witnesses, summoned by an imbecile
subpœna, issued by a powerless ministerial officer, does not
commend itself to our judgment. If such was the intention
of the legislature, the effect would be to divest the court of a
part of its power so important to the accomplishment of its
duties that the provision would have to be declared unconsti-
tutional, and it would be necessary to revive the ancient
practice in chancery of taking depositions by means of a
master or examiner appointed by the court. A part of its
inherent power which existed before must in such case be
held to remain with it, despite the legislative limitation.

But this clearly was not the intention. On the contrary,
the purpose of that part of the code relating to depositions
must have been to devise and put in operation a slightly dif-
ferent and simpler practice or method of exercising the in-
herent power of the court, to provide by law the necessary
officers as examiners, to make them, for that purpose, the
agencies of the court, and to empower such officers to issue
subpœnas as the process of the court, a mere ministerial act,
which in ordinary cases is performed by the clerk, and which
can as well be done by the examining officer. And section
1209 was intended to authorize the court to prevent an un-
lawful interference with its proceedings taken before such
officer, to the same extent as an interference with a proceed-
ing taken under direction of the court by any other of its
officers.

Section 128 of the Code of Civil Procedure strengthens

rather than weakens this conclusion.  One clause of that section is as follows: "Every court shall have power: . . . 6. To compel the attendance of persons to testify in an action or proceeding pending therein, in the cases and manner provided in this code."

It is suggested that this should be interpreted as if it read thus: "Every court shall have power, in the cases and manner provided in this code; to compel the attendance of persons to testify in an action or proceeding therein."  It is claimed that thus construed it would operate as a limitation of the power of the court in this respect to the cases where the code expressly confers the power to compel attendance.  Conceding this to be correct, it would follow from the proposition that the taking of a deposition in an action is, as above shown, a proceeding of the court; that the court would have the power to compel attendance for that purpose, for that would be a "proceeding pending therein."

But the form of expression of the clause is that of a grant, not of a limitation or restriction.  And a proposition so serious as that of depriving a court of its inherent constitutional power is not to be allowed by implication, unless the implication is absolutely necessary.  It should be construed as a mere attempt to declare the powers of the court.  The section, as well as the note of the commissioners who prepared the original edition of the code, shows that nothing more was intended.  It does not interfere with or take away the inherent power of the court to do any act necessary to the exercise of its proper functions, if any such power there be, in addition to those declared in the section.

Subdivision 5 of this section has a more direct application to the present case.  It gives the court power "To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto."  One who is a witness summoned to attend and give his deposition in an action is certainly a person "connected with a judicial proceeding before" the court, and his attendance is a matter "appertaining" to the proceeding in court.  His conduct in failing to attend in obedience to the subpœna is therefore a matter which can be controlled by the

court, and, if so, the control can be made effective only by the existence of the power to punish the disobedience.

It is true, as said in the Lezinsky case, that the statutory right to take depositions can be exercised only in the statutory mode. But this does not affect the conclusion that the statutory procedure is but a substitute for the former equity practice, and therefore a proceeding of the court. As to whether, as said in that case, the taking can be *enforced* only in the statutory method, or whether, without statutory authority, the court has inherent power to enforce it, we need say nothing further, inasmuch as we have decided that there is statutory authority.

It is suggested that the provisions of section 1991 of the Code of Civil Procedure give authority to the officer taking the deposition to punish as for contempt one who disobeys his subpœna or refuses to be sworn or to testify, and that as two punishments for the same offense cannot be allowed, the scope of section 1209 must be so limited as not to include proceedings to take depositions as "proceedings of the court." If the part of section 1991 purporting to give such power to the officer could be considered valid and constitutional, there would be force in the suggestion. But we are of the opinion that the legislature cannot thus dispose of the judicial power of the state. The constitution separates the powers of government into three departments,—legislative, executive, and judicial, (art. III, sec. 1),—and the judicial power is vested in certain specified courts. (Art. VI, sec. 1.) There are some decisions of this court, and many in other states, indicating that notwithstanding such constitutional limitations the legislature may vest some powers of a quasi-judicial nature in ministerial officers. (*Boyer* v. *Superior Court,* 110 Cal. 401; *Kreling* v. *Kreling,* 116 Cal. 458; *Cahill* v. *Colgan,* (Cal.) 31 Pac. 614; *Lambert* v. *Bates,* 137 Cal. 676.) The constitution itself authorizes the appointment of court commissioners to perform some of the duties of the judges of the superior courts (art. VI, sec. 14), and there will always be some difficulty in determining whether or not in any particular case a power vested by law otherwise than in a court comes within the category of judicial power which is delegated exclusively to the courts. But however this may be in other cases, we

are not disposed to give the constitution a construction which will allow ministerial officers to be invested with power to punish individuals by fine and imprisonment. Such power involves the personal liberty of the citizen, and is in its nature a judicial power of the highest degree. It cannot be exercised except after due process of law, and this implies that it must be vested in some court, in all cases except those where the constitution either expressly or by necessary implication vests it elsewhere. It is clear that it could not be given to every officer authorized to administer oaths.

It is said that this presents no reason why it may not be exercised by a judge of the superior court in cases where he is called on to act as an officer taking depositions. It is not necessary in this case to decide whether or not, by virtue of other sections of the Code of Civil Procedure (secs. 177, 178, 179), a judge has such power. We are here considering only that part of the power given by sections 1991 and 2031 which applies alike to every officer in the state who is authorized by law to administer oaths.

There are, however, special reasons why this power should not be vested in the officer taking the deposition. He has not the means at hand to enable him to act advisedly in such matters. A dispute may exist as to whether or not the deposition is taken in good faith, or is resorted to with the purpose of abusing the privilege in order to obtain information for an object foreign to the suit in which it is taken. The officer would have nothing before him from which he could decide such a dispute. So there might be a question asked calling for immaterial evidence, in which case the witness is not bound to answer. The officer has not the pleadings before him and cannot decide the point. The code does not contemplate that he should decide upon the merits of such objections. It is only required that the objection be stated. (Code Civ. Proc., sec. 2032.) And as the court in which the action is pending has the ultimate decision, and should have control of the proceedings for the production of evidence, it is the proper tribunal for the decision of all such questions. They can properly be presented and decided upon the hearing of a charge of contempt.

An objection is sometimes made to the unlimited right to

take depositions, on the ground that it may be abused. If the enforcement of the right is left to the control of the court, and not to the examining officer, it will be able to prevent such abuse. Costs that may accumulate by the taking of depositions unnecessarily will be imposed on the party taking them. If charges of contempt are preferred against distant witnesses, the court must see that the facts showing the materiality of the testimony sought are fully and particularly set forth in the affidavit before issuing the citation. As the party who procures an arrest on such process maliciously and without probable cause will be liable to suit for damages, it is not likely that the abuses will be serious. But the objections on the ground of abuses have little weight as arguments. Citizens who seek the redress of wrongs or the protection of rights from the courts are entitled to use the power of the court for the production of the evidence to establish the facts on which their cases depend, and it is not just to refuse such aid to the many for the sake of preventing possible abuses by the few.

We are of the opinion that proceedings in the taking of depositions in an action are proceedings of the court within the meaning of that phrase as used in section 1209 of the Code of Civil Procedure, and that a refusal to obey a subpœna issued by the officer taking the depositions for the attendance of a witness at such taking is an unlawful interference with the proceedings, and as such punishable as a contempt of the court in which the action is pending, upon a proper charge made to the court by affidavit.

That part of the decision in the Lezinsky case (72 Cal. 510) which holds that the power to punish for such contempts is not given to the court in which the action is pending by the provisions of sections 1986 and 1991 of the Code of Civil Procedure is not inconsistent with this conclusion. Those sections do not attempt to give such power in the case of depositions, except to the officer taking the deposition. But in so far as that case holds that the court in which the action is pending has no power, under section 1209, to punish as a contempt of its authority a refusal to obey the subpœna of a notary engaged in a regular proceeding for the taking of depositions in the action, commanding the attendance of the

witness for the purpose of giving his deposition, we are of
the opinion that it is founded on a too restricted view of the
nature and origin of our courts of general jurisdiction, and
of their powers as set forth in the Code of Civil Procedure,
and that it should be overruled.

It follows from the reasons we have stated that the court
below had jurisdiction of the proceeding for contempt, and
the writ of review should be denied and the proceedings of
the court below affirmed, and it is so ordered.

Henshaw, J., Beatty, C. J., and Van Dyke, J., concurring.

ANGELLOTTI, J., dissenting.—I dissent. It would seem to
be unnecessary to here consider the fact that the superior court
made an order requiring the petitioner to obey the notary's
subpœna, as it is practically admitted by the majority opinion
that the statute furnished no authority for the making of
such an order, and that the making of such an order would
not add to the legal obligation of petitioner to obey the
subpœna. The majority opinion is based entirely upon the
theory that under subdivision 9 of section 1209 of the Code
of Civil Procedure, providing that "The following acts or
omissions in respect to a court of justice, or proceedings
therein, are contempts of the authority of the court. . . .
9. Any other unlawful interference with the process or pro-
ceedings of a court," the refusal of a person to obey a sub-
pœna issued by a notary public, before whom his deposition
was to have been taken upon notice, is a contempt of the
authority of the court in which the action or proceeding is
pending, and that such court has power to punish such person
therefor.

It is admitted that this conclusion is directly the reverse
of that reached by this court in Bank, in the case of *Lezinsky*
v. *Superior Court*, 72 Cal. 510, and that decision is expressly
overruled. For more than fifteen years the Lezinsky case
has been accepted without question as a proper construction
of our statutory law, so far as the question here involved
is concerned; and notwithstanding the statement therein con-
tained, that "Whether or not the power to enforce the
attendance of witnesses out of court should be enlarged is a
question for legislative determination," there has been no

amendment of our code provisions in this respect. The legislative determination that such power should not be enlarged is fully demonstrated by this absence of further statutory enlargement, and to now give a different construction to the statute would seem to be purely judicial legislation. Regardless of this, I see in the majority opinion, which is apparently based upon the supposed necessities of the situation, no answer to the reasoning of this court in the Lezinsky case. As was said in that case, the right to take a deposition upon notice, without any order of court therefor, is a mere statutory privilege, and can be exercised and enforced only in the manner and to the extent provided by the statute which gives it. The taking of such a deposition is in no true sense a "proceeding" *in or of a court of justice,* within the meaning of subdivision 9 of section 1209 of the Code of Civil Procedure, which, in my judgment, furnishes no authority for the order in question. The order of the superior court adjudging petitioner guilty of contempt should be annulled.

McFarland, J., and Lorigan, J., concurred in the dissenting opinion.