### In re SIMON.

(Circuit Court of Appeals, Second Circuit. March 3, 1924.)

#### No. 256.

Bankruptcy ⬅407(1)—Refusal to obey "subpœna" ground for denying discharge; "lawful order of the court."

A "subpœna" is a writ, and being mandatory, is a "lawful order of the court," within the meaning of Bankruptcy Act, § 14b (6), as amended by Act June 25, 1910, § 6 (Comp. St. § 9598), and the refusal of a bankrupt to obey a subpœna issued in the proceedings, for which he was adjudged in contempt, is ground for denying his discharge.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lawful Order; Subpœna.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Aaron W. Simon, bankrupt. On appeal by bankrupt from an order denying his discharge. Affirmed.

Abraham I. Smolens, of New York City (Paul Weintraub, of New York City, of counsel, and Jacob S. Manheimer, of New York City, on the brief), for appellant.

Ross, Reiburn & Kaufman, of New York City (Arthur Leonard Ross, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This is an appeal from an order refusing the bankrupt his discharge. It appears that the bankrupt filed a voluntary petition in bankruptcy on March 20, 1923, in the District Court for the Southern District of New York. It appears, too, that a writ of subpœna was issued in the course of the bankrupt proceedings, on June 20, 1923, requiring the bankrupt to appear before the referee in bankruptcy. This order he failed to comply with, and on July 20, 1923, he was adjudged in contempt of court for failing to comply with the subpœna, and was directed to pay a fine of $25 in punishment thereof. No appeal from that order was taken and the fine was paid. On July 19, 1923, he filed his petition asking for his discharge from all his debts, except such as are excepted from such discharge.

On August 22, 1923, an unsecured creditor of the bankrupt appeared and filed a notice that he opposed the discharge. And on August 29, 1923, he filed a paper stating the grounds of his opposition to the discharge. Among the grounds stated was that he had willfully disobeyed a writ of subpœna issued out of the court, and was by reason of his disobedience adjudged in contempt and directed to pay the fine above mentioned. Thereafter the attorney for the objecting creditor prayed the court, on August 29, 1923, for an order denying the bankrupt his discharge because of his failure to obey the writ of subpœna. After considering affidavits presented for and against the motion to deny the discharge, an order was entered in the District Court on October 1, 1923, denying the bankrupt his discharge on the ground that he had refused to obey a lawful order of the court and for such disobedience had been adjudged in contempt.

The Act of June 25, 1910, which amended the Bankruptcy Act, provided in section 6b that the court might discharge the bankrupt unless (subdivision 6) "in the course of the proceedings in bankruptcy [he had] refused to obey any lawful order of, or to answer any material question approved by the court." 36 Stat. 840 (Comp. St. § 9598). It is claimed that the failure of the bankrupt to obey the subpœna was not a disobedience of the order of the court. Counsel tell us that they—

"cannot comprehend how by any stretch of the imagination a subpœna can be termed an order of the court. The word 'order,' contained in the statute, must be interpreted in the sense in which it is usually employed. Nowhere have we seen it employed to include a subpœna."

It cannot be denied, however, that a subpœna is a writ. The New Standard Dictionary defines it as follows:

"A judicial writ, requiring a person to appear at a specified time and place, or pay a penalty or undergo a punishment for default, so called from the Latin words with which it formerly began."

It is defined in Greenleaf's Evidence, vol. 1, p. 452, as follows:

"A writ of subpœna * * * is a judicial writ directed to the witness commanding him to appear at the court, to testify what he knows in the cause therein described, pending in such court, under a certain penalty mentioned in the writ."

It will not be denied that a writ is a mandatory precept issued by a court, commanding the person to whom it is addressed to do or refrain from doing some act therein specified. Because it is mandatory, and is issued by a court, it is an order of the court. The fact that a writ of subpœna is actually signed in writing by the clerk of the court, and does not contain the written signature of the judge of the court, makes it none the less the court's order. The signature of the judge is printed in the concluding clause, which constitutes the test of the writ. It is there in attestation of the fact that the writ is issued by authority. The subpœna issued to the bankrupt does not appear in the record, but we take judicial notice of the fact that in the Southern district of New York every summons or subpœna issued in the district concludes as follows:

"Witness, Hon. Learned Hand, Judge of the District Court of the United States for the Southern District of New York at the city of New York on the * * *."

That certainly and sufficiently indicates that the writ is issued with the authority of the court, and, being mandatory, is the order of the court. Professor Wigmore, in his authoritative work on the Law of Evidence, has gone somewhat fully into the history of the right to compulsory process to compel witnesses to appear in court to give their testimony in civil and criminal cases. See volume 3, § 2190 et seq. The time was when a witness could not be compelled to go to court and testify, and if he attended and gave testimony his action was thought to bear the semblance of maintenance, and he ran the risk, if he came forward to testify, of being afterwards sued for maintenance by the party against whom he had spoken. See, too, Thayer on Evidence, 124–129. One of the judges in 1450 said of such a witness:

"If he had come to the bar out of his own head and spoken for the one or the other it is maintenance and he will be punished for it." Y. B. 28 Hen. VI, 6, 1.

Commenting on this Professor Wigmore says:

"Create a general compulsion of law for all persons whose information may be needed or desired as useful by the parties, and the obstacle to getting witnesses would be removed. Let an order of the judge, commanding such person's appearance, be obtainable, and the risk of a charge of maintenance would be removed, and no man need fear to come forward as a witness. Such was the expedient which was plainly dictated by the exigency; and such, beyond a doubt, was the genesis—slow as the creative process was—of the notable Statute of Elizabeth, in 1562–63, by which a penalty was imposed and a civil action was granted against any person who refused to attend, after service of process and tender of expenses."

The subpœna, issued under the seal of the court, and bearing the test of the judge, and signed by the clerk, is "the order of the judge" or of the court referred to in the passage above quoted. Judicial Code, § 262 (Comp. St. § 1239), provides that:

"The Supreme Court, the Circuit Courts of Appeals, and the District Courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

This is an embodiment in the Judicial Code of what was provided in the Judiciary Act of September 24, 1789, which established the judicial courts of the United States. 1 Stat. 81, c. 20, § 14 (Comp. St. § 1239). And the Act of May 8, 1792, provided in section 1:

"That all writs and processes issuing from * * * a District Court shall bear test of the judge of such court (or if that office shall be vacant) of the clerk thereof, which said writs and processes shall be under the seal of the court from whence they issue, and signed by the clerk thereof. * * * *"

This stands at the present time substantially unchanged. See Revised Statutes, § 911 (Comp. St. § 1534). By virtue of the authority thus granted, the District Court, not the clerk, is empowered to issue its writ of subpœna, and when issued its command is that of the court, not that of the clerk. A clerk is an officer of the court, whose duties are chiefly ministerial, and who is without authority to exercise judicial powers without constitutional or statutory authorization.

A subpœna is a writ or process, and is mandatory in its nature, being a positive command. A writ of subpœna, like a writ of scire facias, fieri facias, habeas corpus, certiorari, supersedeas, and the various other writs, "are all commands or orders of court that something be done." And the word "process," as used in the statute, "means an order of court, although it may be issued by the clerk." Leas & McVitty v. Merriman (C. C.) 132 Fed. 510. A subpœna is defined as:

"The process by which the attendance of a witness is required; .a writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness." 37 Cyc. 359.

In Burns v. Superior Court, 140 Cal. 1, 3, 73 Pac. 597, 598, the court said that the very etymology of the word "subpœna" signifies "an order with a penalty for disobedience." In the case of Scott v. Shields, 8 Cal. App. 12, 96 Pac. 385, a subpœna is said to be:

"A writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness."

Under the statutes the federal courts have power to compel the attendance of persons to testify in any action or proceeding before them. The power is in the courts, not in the clerks of the courts, and when the subpœna issues it goes forth as the order of the court, and not of the clerk of the court. And when the court punishes for contempt the failure of the witness to obey the subpœna, it is punishing for a contempt of the court's authority, and the court's order, not the contempt of the clerk's authority and the clerk's order. The authority for the issuance of the subpœna is derived from the statutory provisions already cited.

It is said that an order of the court is without effect until it is en-- tered of record, and until so entered it cannot be executed or acted upon. That is undoubtedly the general rule. But such a rule has no application in the federal courts to issuance of a writ of subpœna. It certainly has never been the law that before such a writ can issue the judge must make an order and cause it to be entered on the records of the court directing the writ to issue. It is none the less on that account the order of the court.

"Process to bring a party into court has never been regarded as requiring judicial action, and hence it is issued as a matter of course by the clerk." Commercial Bank of Rodney v. State, 4 Smedes & M. (Miss.) 439, 515.

And if judicial action is not necessary there can be no necessity for any entry on the records of the court of the court's authorization of its issuance. In some of the states statutes may permit a summons or a subpœna to be issued by an attorney, but such statutes do not apply to proceedings in federal courts, and we are not in this case dealing with a subpœna so issued.

It is our conclusion that the refusal of the bankrupt, in the course of the bankruptcy proceedings, to appear, after having been subpœnaed to give testimony and without any sufficient excuse therefor, is a refusal to obey a "lawful order," within the meaning of section 14, subd. b (6), of the Bankruptcy Act, and therefore justified the order of the court denying him his discharge. As the court below entered an order punishing him for contempt of court in disobeying the subpœna, and he never appealed from that order, but paid the fine imposed, we must conclude that he had no legal and sufficient reason for disobeying the subpœna.

Order affirmed.