**STATE OF LOUISIANA** ex rel. James GWIN, Plaintiff-Appellant,

v.

**Hayden J. DEES, Warden, Louisiana State Penitentiary, Defendant-Appellee.**

No. 26873

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

April 25, 1969.

William F. Wessel, Court appointed, New Orleans, La., for appellant.

James Gwin, pro se.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., for appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I.

This appeal lies from the denial of appellant's petition for a writ of habeas corpus. We hold that the lower court's findings of fact were not clearly erroneous, and hence we affirm the judgment of the District Court for the reasons well expressed in the written opinion

of Judge Dawkins (unpublished and therefore appended hereto). Picard v. Allgood, 5 Cir., 1968, 400 F.2d 887; Busby v. Holman, 5 Cir., 1966, 356 F.2d 75, 80. See Pursley v. United States, 5 Cir., 1968, 391 F.2d 224.

Affirmed.

## APPENDIX

DAWKINS, Chief Judge:

This application, pursuant to 28 U.S.C. § 2241 *et seq.*, is brought by James Gwin for a writ of habeas corpus granting his immediate release from the custody of the Warden of the Louisiana State Penitentiary.

■ Prior to institution of this proceeding, petitioner previously had applied for a writ of habeas corpus in the proper courts of Louisiana which finally resulted in the refusal of petitioner's writ by the Louisiana Supreme Court. Consequently, petitioner properly has exhausted his legal remedies in the Louisiana State Courts as required by 28 U.S.C. § 2254(b), and his claim properly is before this Court here.

Salient facts giving rise to this application are set forth below.

November 18, 1959, the Oak Ridge Bank, Oak Ridge, Louisiana, was robbed of some $13,050.00 by two men at gun point. November 22, 1959, petitioner and his brother, Otis Ray Gwin, were arrested in connection with this bank robbery. At arraignment, in April, 1960, the Gwin brothers pleaded "not guilty" to the charge of armed robbery. Trial was set for May of that year and resulted in a hung jury.

The record reveals that the two key defense witnesses in that trial were later convicted of perjury in connection with their testimony which in essence had provided an alibi for the Gwin brothers in the armed robbery charge. A new trial, therefore, was set for October, 1960. In the interim the Gwin brothers were released on bail.

Subsequently, while on bond, Otis Ray Gwin attempted to dispose of certain monies and again was apprehended by State law enforcement officials. Upon further investigation, it was found that money had been buried by the Gwin brothers and the serial numbers on these bills corresponded to those which had been taken in the Oak Ridge Bank robbery.

Petitioner James Gwin likewise was arrested in New Orleans when he was found with a substantial sum of money on his person. He later testified that he intended to flush some $2300 down a commode in a New Orleans hotel and that this money had come from the bank hold-up described above.

In light of this newly discovered evidence, and prior to the second trial concerning the armed robbery charges, which was set for October, 1960, petitioner and his brother decided to change their plea from not guilty to guilty. The State Court of Louisiana accepted these pleas and sentenced petitioner to twenty years in the State Penitentiary and his brother received a ten-year term. The record reveals that the discrepancy in these sentences resulted from the rather extensive criminal record which petitioner had built up prior to the armed robbery charges. His brother was a first-offender.

After brief incarceration in the Louisiana State Penitentiary, petitioner escaped and was recaptured. He was then convicted of the crime of escape and given an additional two years. Escape was affected by petitioner for a second time and he received an additional two-year sentence. While incarcerated, he was called as a witness in a separate matter, and following his testimony in that case was convicted of attempted perjury for which he received another five-year term of confinement. All of these sentences were to run consecutively, which means that petitioner is under sentences totalling some twenty-nine years. At the time this application was heard, he had served six years and nine months of the total of twenty-nine years to which he was sentenced.

Petitioner contends that he is entitled to immediate release from custody from the State authorities because his plea of guilty in connection with the armed robbery charge was not entered voluntarily. In this connection he alleges he was misled into believing that the maximum sentence he could receive for a conviction of armed robbery was fifteen years, when in fact it was thirty years. The record reveals that during the May, 1960, trial, which resulted in a hung jury, both the prosecuting attorney and District Judge in argument to the jury, and in instructions to the jury, stated that the maximum penalty for conviction of armed robbery was fifteen years.

The record further reveals that the law had been amended in 1958 to change the maximum sentence from fifteen to thirty years. That these statements were innocently made by both the Trial Judge and prosecuting attorney is an uncontroverted fact in this case. Thus, petitioner alleges that when he changed his plea to guilty in October, 1960, he was under the distinct impression that the maximum sentence he could receive was fifteen years and that he was further of the impression that he would get a reduced sentence for pleading guilty. At all stages of the proceedings, petitioner was ably represented by two counsel of his own choosing, both extremely experienced in the field of Louisiana criminal law.

At the evidentiary hearing held in connection with this application, both counsel who represented the defendant in the State Court proceedings testified that it was not their practice to allow a client to plead guilty if they [counsel] did not know the maximum sentence which would be imposed. They further indicated that this case was no exception. However, they were unable specifically to recall whether they had discussed the matter with petitioner Gwin.

We granted petitioner an evidentiary hearing. During that hearing, petitioner stated that his plea of guilty was not induced by threats or promises of any kind. He did indicate, however, that he had discussed the possibility of a guilty plea with Sheriff Hinton, who is now deceased. The record is clear that the primary reason petitioner decided to change his plea was the additional evidence which was discovered in connection with the money found in the possession of petitioner and his brother, as outlined above.

Also noteworthy is the fact that at the time petitioner was sentenced to twenty years neither he nor his counsel objected to the length of sentence given. When questioned by this Court concerning his failure to object to this sentence as it was imposed, petitioner stated that he was "bitter against it" and that he just didn't say anything. He later testified that this sentence, which he felt to be entirely unjust and illegal, was the primary reason that he attempted to escape from the State Penitentiary.

W. Sartis Bassett, petitioner's chief counsel in the State Court proceedings, testified that he had handled some twenty criminal cases which involved the possible death penalty and an additional fifty-four criminal cases which did not involve the death penalty. As previously mentioned, Bassett stated that he never let a client plead guilty unless he, Bassett, was absolutely certain of the sentence to be imposed. He further testified that it was his normal practice to tell the client of the possible sentence to be imposed prior to his plea. Bassett positively stated that the additional evidence uncovered by the State directly prompted petitioner's change of plea. Petitioner had previously testified that this was the primary motive for his change of plea.

Petitioner's co-counsel in the State Court proceedings, Jodie Stout, testified that he was with petitioner when he pleaded guilty and that he [Stout] fully understood the maximum penalty which could be imposed under the armed robbery statute was thirty years, but that the sentence to be imposed was twenty years. Neither counsel could recall specifically discussing the maximum penalty which could be imposed upon petitioner

but both indicated that this undoubtedly was the situation. Both attorneys definitely testified that the sentence to be imposed after the plea of guilty was discussed with petitioner in detail after their talks with the prosecuting attorneys and the Trial Judge.

▆ It is well established that one who pleads guilty to a crime under the impression that conviction under a plea of guilty carries a given maximum sentence cannot be said to have "voluntarily" pleaded guilty when, in fact, the maximum sentence imposed is in excess thereof. In essence, this is the gist of petitioner's claim here. He further alleges that because his incarceration pursuant to his guilty plea was illegal, the subsequent convictions of escape and attempted perjury are also subject to being set aside.

For the following reasons we find petitioner's application to be without merit:

As a fact-finder, charged with careful review of this record as a whole in order to weigh the evidence presented and judge the credibility of the witnesses who testified, we find that petitioner James Gwin legally was convicted and sentenced on the charge of armed robbery. All the evidence presented in this case clearly substantiates this finding.

It is uncontroverted, indeed it is conceded by the State, that the maximum penalty for armed robbery was inadvertently and erroneously stated by both the Trial Judge and prosecuting attorney during the May, 1960, trial which resulted in a hung jury. However, Gwin was not sentenced at that time, and it was not until October of that year that he entered his plea of guilty to the charge of armed robbery. This plea came only after additional evidence was discovered which clearly indicated that he and his brother, Otis, had in fact robbed the Oak Ridge Bank. At this time, defendant, upon advice of two able and experienced lawyers, tendered his voluntary plea of guilty, which was accepted by the State Court.

Now, after approximately seven years of incarceration, petitioner claims that he did not knowingly and understandingly enter his plea of guilty because he was not properly apprised of the maximum sentence to be imposed under the armed robbery statute. When queried by this Court as to the reason he did not object to the sentence at the time imposed, petitioner stated that he was "bitter" and decided not to enter any objection. Counsel for petitioner stated that had the sentence imposed by the trial court been improper or illegal in any way he quickly would have objected to it. The record reveals that no objection was made.

Also, as a fact-finder we do not believe petitioner's uncorroborated allegations that he was not apprised of the maximum sentence which could be imposed at the time he changed his not-guilty plea to guilty. As mentioned many times before, he was ably represented by two experienced criminal lawyers. Both testified they discussed the sentence with the District Attorney and the Trial Judge and it is inconceivable that they did not discuss this with petitioner. Both testified that this was their customary practice and that this case was no exception. Petitioner, no where in his pleadings, claims that he was induced to change his plea by violence, threats, or promises to do so. On the contrary, he admitted himself that the reason he changed his plea was the newly discovered evidence which clearly established that he was guilty of the crime in question.

In view of these findings, we hold that petitioner's application for a writ of habeas corpus is without merit, and it is, therefore, denied.

A certificate of probable cause will be denied; and a proper decree should be presented for signature.

THUS DONE AND SIGNED, in Chambers, in Shreveport, Louisiana, this 14th day of May, 1968.

/s/ Ben C. Dawkins, Jr.
Chief Judge