[No. B127289. Second Dist., Div. Six. Aug. 26, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS REED WEBB, Defendant and Appellant.

COUNSEL

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Deborah J. Chuang, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

YEGAN, J.—If a picture is worth a thousand words, a moving picture is worth a million. Here, a surreptitiously recorded videotape served as an evidentiary bombshell by depicting appellant as a robust commercial fisherman, not a sedentary invalid entitled to $42,000 worth of in-home attendant care. Thus, Thomas Reed Webb was convicted of making a false or fraudulent statement to obtain workers' compensation benefits (Ins. Code,

§ 1871.4, subd. (a)(1))[1], perjury (Pen. Code, § 118, subd. (a)),[2] and grand theft by false pretenses. (§ 487, subd. (a).) He contends the evidence is insufficient to support the convictions because each crime requires a misstatement of fact, and he made only statements of opinion concerning his pain and the assistance he required at home. He also contends that the trial court erred by not instructing the jury on this distinction, and on the defense of good faith. Finally, appellant contends his trial counsel was ineffective by not requesting these instructions. We affirm.

### Facts and Procedural History

In 1977, appellant seriously injured his back while working as a truck driver. For this legitimate injury and as part of his workers' compensation award, appellant was awarded lifetime medical benefits from Industrial Indemnity Insurance Company (Industrial Indemnity). In August 1994, his chiropractor notified Industrial Indemnity that appellant needed in-home attendant care to help him with showering, toileting, cooking, cleaning, stretching, and walking. At that time, appellant was living with his long-time friend, Nancie Maloney. Industrial Indemnity agreed that Maloney would be his caregiver. Between August 1994 and July 1996, Industrial Indemnity paid a total of $42,784 for appellant's in-home attendant care.

In January 1996, Industrial Indemnity arranged for appellant to be examined by Dr. Daniel Ovadia, an orthopedic surgeon. Appellant appeared for the exam using a walker. He told Dr. Ovadia that he was experiencing severe pain and could not care for himself. Although Dr. Ovadia agreed that appellant had a back injury, he saw no objective basis for the degree of pain and disability reported by appellant.

After receiving Dr. Ovadia's report, Industrial Indemnity ceased to pay in-home attendant care benefits to appellant. Appellant sought relief from the Workers' Compensation Appeals Board (WCAB). Before the hearing, Industrial Indemnity hired a private investigator to conduct a surveillance of appellant. On four consecutive days in July 1996, the investigator saw appellant driving a pickup truck, walking outside his house without assistance, and bending from the waist to pick things up.

On August 6, 1996, the investigator videotaped appellant, who holds a commercial fishing license, as he piloted a 26-foot outboard motor boat to a

---

[1] Insurance Code section 1871.4, subdivision (a)(1) provides that it is unlawful to, "[m]ake or cause to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying . . . [,]" any workers' compensation benefits.

[2] All further statutory references are to the Penal Code.

pier at the Port of San Luis. Appellant climbed over the side of the boat and scaled a steep 12-foot vertical ladder onto the dock. Once on the dock, he used a hydraulic winch to lift baskets of fish from the boat to the dock. Appellant bent at the waist and dragged the fish-laden baskets about 70 feet to a series of tanks. He lifted the baskets onto waist-level tables, sorted the fish into different cartons, weighed and logged them for sale to a nearby restaurant, and then dumped the fish into water tanks. On August 9, 1996, the investigator again videotaped appellant engaging in similar fishing activities. The investigator estimated that the fish baskets weighed 40 to 50 pounds each.

On October 2, 1996, the day before the WCAB hearing, the investigator videotaped appellant hosing down the boat after it had been removed from the water. Appellant then towed the boat home with his pickup truck and uncoupled the boat trailer from truck. The next day, he drove himself to the WCAB hearing and used a walker to move from his truck to the hearing room.[3]

At the WCAB hearing, appellant described his daily life as essentially sedentary, stating that he needed help with showering, stretching and toileting. Appellant also indicated that he took pain medication in both the morning and evening, "whatever I need as far as how I feel." He testified that he left his house two or three times a week for doctor's appointments, for a ride, or to sit in a "wheelchair thing" on the pier. He usually walked with a cane or walker. Appellant testified that he had a typical day on the day before the WCAB hearing. He said he had been out of the house for about 45 minutes and denied having washed the boat. After watching the videotape, appellant testified that he had not washed the boat because he was only holding the hose.

At trial, appellant's doctor, chiropractor and in-home attendant testified that he visited the doctor and chiropractor only a few times each year and did not take pain medication daily. Records maintained by the Department of Fish and Game established that appellant commercially sold fish on at least 10 occasions in 1996. Several of appellant's neighbors and his stepmother testified that while they had seen him walking, the had never seen him use a cane or walker.

---

[3]We ordered the videotape, People's exhibit No. 4, transmitted to this court and have viewed it. (Cal. Rules of Court, rule 10(d).) It may be fairly characterized as a "smoking gun," that is, "something that serves as indisputable evidence or proof, esp. of a crime." (Am. Heritage Dict. (2d ed. 1982) p. 1155, col. 2.) What is particularly striking is the full range of walking and bending activities associated with appellant's commerical fishing in juxtaposition to the feeble steps with a walker that he took to and from the WCAB hearing.

Nancie Maloney maintained a daily log of the care she provided to appellant. The log indicated that appellant had "good days," on which he needed very little care, and "bad days," during which he took medication, was "down" most of the day, and needed more care. Maloney testified that, even on a good day, appellant needs help putting on socks and showering. On bad days, he can barely move and needs help cleaning himself after using the toilet. He is frequently up all night with pain.

Appellant's canceled checks showed that he made purchases at local stores on days when Maloney's log said he was "down" and taking medication. According to the log, appellant had a very good day, took no medication, and needed no care on the day he was examined by Dr. Ovadia.

The Industrial Indemnity claims adjuster who approved appellant's request for in-home care believed that he would not need care every day and was not completely immobile. She did not, however, know that he was capable of commercial fishing. Neighbors and former housemates testified that appellant often used a cane, a walker, or the wall for support while walking. These witnesses had never seen appellant bend over to pick something up. They believed he was often immobilized by pain.

Appellant testified that he is often so disabled by pain that he cannot move without help. He is rarely able to go fishing. When he does, he earns no profit and does not lift heavy objects. The investigator's videotape was taken on "good" days. The baskets of fish he is shown lifting on the videotape weighed less than 20 pounds.

*False Statements*

Theft by false pretenses, and the violation of Insurance Code section 1871.4, subdivision (a)(1), require that a defendant knowingly make a false, material statement, for the purpose of obtaining another's property or obtaining workers' compensation benefits. (Ins. Code, § 1871.4, subd. (a)(1); *People* v. *Wooten* (1996) 44 Cal.App.4th 1834, 1842 [52 Cal.Rptr.2d 765]; *People* v. *Randono* (1973) 32 Cal.App.3d 164, 172 [108 Cal.Rptr. 326].) Appellant contends he did not violate these statutes because his statements about pain and his need for an in-home attendant were statements of opinion, rather than fact. He suggests that, as a matter of public policy, insured persons should not be subject to criminal liability for "exaggerating"

their symptoms to obtain medical care that others might deem unnecessary. We are not persuaded.[4]

Even if we accept the premise that appellant did nothing more than state an "exaggerated" opinion, his statements are sufficient to prove each offense. "A dishonest opinion expressed to one entitled to rely upon it is actionable deceit. [Citations.] ■ It is false pretense to take the property of another by force of an opinion asserted in bad faith and with a design to mislead." (*People* v. *Gordon* (1945) 71 Cal.App.2d 606, 626 [163 P.2d 110]; see also *People* v. *Marsh* (1962) 58 Cal.2d 732, 740-741 [26 Cal.Rptr. 300, 376 P.2d 300].) A statement of opinion may also support fraud liability where the statement is "based on facts known by the speaker to be nonexistent, . . ." or where the speaker, "has knowledge of facts, not warranting the opinion . . . ." (*Daniels* v. *Oldenburg* (1950) 100 Cal.App.2d 724, 727 [224 P.2d 472].) Conversely, it is a defense, "to an allegation of intent to defraud that the accused acted . . . in the good faith belief that his conduct was justified." (*People* v. *Louie* (1984) 158 Cal.App.3d Supp. 28, 43 [205 Cal.Rptr. 247].)

■ Here, the evidence credited by the jury showed that appellant did not honestly hold the opinions he expressed. Appellant told Dr. Ovadia that he experienced intense pain and was unable to perform even the most basic personal hygiene tasks. At the same time, the videotape showed that appellant could drive a car, pilot a commercial fishing boat, climb a vertical ladder and hoist his catch onto sorting tables. From this evidence, the jury could reasonably conclude that appellant's story was "fishy" in more ways than one. That is to say, appellant knew his pain was not as severe as he represented and never honestly held the opinion that he required an in-home attendant.

### Perjury

The trial court's instructions to the jury identified 13 statements made by appellant at the WCAB hearing which the prosecution alleged to be false. Appellant argues that two of these statements were matters of opinion and

---

[4]We certainly recognize the subjective nature of pain. Some people minimize it. Some people maximize it. Those who "exaggerate" it to obtain workers' compensation benefits with criminal intent have crossed the theft line.

We agree with the trial court's observation that "the legitimate injury that Mr. Webb suffered in 1977 and the pain that he had over the years following gave way to temptation and greed. And he did, in fact, take advantage, criminal advantage of the system."

could not support a perjury conviction.[5] He contends his conviction must be reversed because it cannot be determined whether the jury based its verdict on either of these statements. (*People* v. *Harris* (1994) 9 Cal.4th 407, 419 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) This argument fails for the reasons stated above. ■ Opinion testimony constitutes perjury, "if the witness does not honestly hold the opinion to which he or she testifies." (*In re Robbins* (1998) 18 Cal.4th 770, 801, fn. 24 [77 Cal.Rptr.2d 153, 959 P.2d 311]; see also *People* v. *Dixon* (1950) 99 Cal.App.2d 94, 96 [221 P.2d 198].) Here, the jury impliedly determined that appellant did not honestly hold the opinion or belief that his back pain was so severe he could not take care of himself. That finding is supported by substantial evidence.

### Claimed Instructional Error and Ineffective Assistance

■ A trial court must instruct, sua sponte, on the general principles of law that are "closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case." (*People* v. *Montoya* (1994) 7 Cal.4th 1027, 1047 [31 Cal.Rptr.2d 128, 874 P.2d 903].) This includes a duty to instruct, sua sponte, on defenses that are supported by substantial evidence and not inconsistent with the defense theory of the case. (*People* v. *Middleton* (1997) 52 Cal.App.4th 19, 30 [60 Cal.Rptr.2d 366].)

■ Appellant contends the trial court should have instructed the jury sua sponte on the difference between a statement of fact and of opinion, and that opinions do not constitute fraud or theft by false pretenses. The argument is unpersuasive because here, the distinction between fact and opinion is one without a difference. Even if appellant's statements to the insurance company, Dr. Ovadia and the WCAB were statements of opinion rather than fact, the jury impliedly determined that the statements were false because appellant did not honestly hold those opinions. The trial court had no duty to distinguish between the two categories because, under either category, the statements at issue were sufficient to support the crimes alleged.

Nor can we conclude that the trial court erred by not instructing on the defense of a good faith belief in the opinions expressed by appellant. (See e.g., *In re Robbins, supra,* 18 Cal.4th at p. 801, fn. 24; *People* v. *Louie, supra,* 158 Cal.App.3d at pp. Supp. 43-44.) The trial court's instructions on each crime required the jury to find that appellant's statements were false and

---

[5]The statements are: "1. That [appellant's] daily activities are limited to being helped with a shower, given therapy, being dressed and undressed, given massage, and taking medications[,]" and, "11. That [appellant's] physical restrictions mean he can only 'drive the boat some and sit.' "

made with the specific intent to defraud or to testify falsely. (CALJIC Nos. 7.20, 14.10.) The instructions on perjury expressly informed the jury that, "A statement made under an actual mistake and in a belief that it is true is not perjury even though the statement is false." (CALJIC No. 7.24.) Had the jury found that appellant honestly held the opinions he expressed, these instructions would have required it to acquit. A more specific instruction on good faith was unnecessary.

We reject the ineffective assistance of counsel argument because appellant was not prejudiced by counsel's not requesting jury instructions on these issues. The question of appellant's honesty and good faith was resolved adversely to him under other, properly given instructions. The case was fact driven and did not turn on esoteric legal principles. It is not reasonably probable that appellant would have achieved a more favorable result had counsel requested the instructions. (*People* v. *Avena* (1996) 13 Cal.4th 394, 418 [53 Cal.Rptr.2d 301, 916 P.2d 1000]; *People* v. *Padilla* (1995) 11 Cal.4th 891, 951 [47 Cal.Rptr.2d 426, 906 P.2d 388].)

The judgment is affirmed.

Gilbert, Acting P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 23, 1999.