[No. B143588. Second Dist., Div. Five. Dec. 11, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
SETSUKO BETTY POST, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for parts III. D and E.

468

## COUNSEL

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, William T. Harter and Jeffrey A. Hoskinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.—**

### I. INTRODUCTION

In the decision of *In re Michael* (1945) 326 U.S. 224, 227 [66 S.Ct. 78, 80, 90 L.Ed. 30], Associate Justice Hugo Black wrote: "All perjured relevant testimony is at war with justice . . . ." California has virtually surrendered in this war when it comes to perjury during depositions. As will be noted, we conclude that unless a deposition transcript in a workers' compensation matter is executed by the deponent, the crime of perjury cannot be committed. In reaching this conclusion which is clearly at odds with the public interest, we urge our Legislature to promptly bring California into line with federal law which quite intelligently provides that the crime of perjury is committed when a deponent lies as to a material issue at a deposition.

Defendant, Setsuko Betty Post, appeals from her convictions for one count of workers' compensation insurance fraud (Ins. Code, § 1871.4, subd. (a)(1)) and two counts of perjury. (Pen. Code,[1] § 118.) Defendant argues there was insufficient evidence to support the verdicts; the trial court improperly refused to instruct the jury with a special instruction; and the trial court improperly instructed the jury with CALJIC No. 17.41.1. In the published portion of this opinion, we will discuss some of defendant's sufficiency of the evidence contentions relating to the insurance fraud and perjury allegations. We will modify the judgment to state defendant has been convicted of attempted perjury in counts 2 and 3. In all other respects, we will affirm the judgment.

---

[1]Unless otherwise indicated, all statutory references will be to the Penal Code.

## II. Background

### A. *Factual Matters*

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.) On August 14, 1992, defendant was employed by Methodist Hospital Southern California, where she allegedly tripped and fell. Defendant claimed she injured her neck, back, and toe as a result of the fall. She also claimed she suffered from general body aches. Defendant was initially off work and received temporary disability workers' compensation benefits from August 15, 1992, to August 2, 1995. Thereafter, defendant received permanent disability benefits until May 28, 1997. On May 28, 1997, defendant settled her claim with Methodist Hospital. The settlement provided for free medical treatment for all body parts injured on the job. On July 15, 1997, defendant filed a petition to reopen her initial claim, alleging new and further disability as a result of her original injuries. Thereafter, Keenan and Associates, the insurance company administering the disability payments to defendant, filed opposition to her petition to reopen her claim. Company employees also began an investigation to determine whether defendant had sustained a new and further disability. The investigation included surveillance and videotaping of defendant's activities.

On February 25, 1998, defendant was seen using a cane as she walked into her doctor's office. Defendant was videotaped leaving the doctor's office later in the day. Defendant was carrying her cane and purse, but did not use the cane to walk to her husband's car. Thereafter, defendant was observed walking into a computer store in a normal gait without the use of her cane. A few hours later, the videotape showed defendant entering a post office without her cane. She exited the post office carrying mail in her left hand. On March 11, 1998, defendant was videotaped entering and exiting the Workers' Compensation Appeals Board office. Defendant walked slowly with the assistance of a cane. A videotape of defendant's arrival at her home later that day showed her carrying the cane, but not using it as a crutch.

On March 26, 1998, defendant was videotaped as she walked a large oversized trash can on wheels to the curb from inside the house. Defendant then pulled a small trash can with one hand and walked another one to the curb. She then dragged another trash can to the curb. Defendant bent down to pick things up from her lawn. Defendant was not using a cane at any time during this videotaping.

At approximately 11:05 a.m. on April 25, 1998, defendant was taped as she exited the gate of her home. She was not using a cane to walk. She walked to the middle of the driveway. Defendant walked back to the garage door, where she bent over to unlock it. Defendant opened the garage door manually. She walked back to the side yard in a normal gait. Thereafter, she walked up the two stairs into her residence without assistance. Defendant stopped, bent from the waist down, and pulled a weed. Later the same day, defendant drove to a residence in El Monte. Defendant walked around the front yard of the residence with another woman, looking at plants and trees. Defendant did not use a cane for assistance. Defendant then lifted a chain saw and placed it in the rear of her car. She closed the hatchback of the car. Defendant got into the driver's seat, reached for the shoulder strap with her right hand, secured the seat belt, and drove away with the other woman in the passenger seat.

Defendant and the woman drove to an outdoor market, arriving at 2:23 p.m. Defendant got out of the car. Defendant walked without her cane to the store with her purse on her left arm. Defendant filled two plastic bags with fruit. Defendant handed one to the other woman. Defendant left the store with her purse on her left arm and carrying a bag of fruit. The two women drove across the street to a grocery store. The two women exited the store with a grocery cart. Defendant picked up two grocery bags at the same time, walked to the driver's side, opened the door, and pushed the driver's seat forward. Defendant then leaned inside the car, placing the bags in the back of the automobile. Defendant then drove to another grocery store. Defendant was videotaped pushing a full shopping cart to her car. Defendant lifted two 6-packs of soft drinks in her left hand from the cart into her car. She continued to unload groceries into the car by bending and stooping. Defendant was walking without the assistance of a cane. Defendant next went to a Circle K market. Defendant drove home, arriving at 4:54 p.m.

On April 26, 1998, defendant was videotaped at her home. At 11:27 a.m., defendant was shown stooping over on her front porch. She appeared to be removing a hose. Defendant watered the garden with both hands on the hose. She was not using a cane. Defendant coiled up the hose. Approximately an hour later, defendant's husband was cutting branches from a tree with a chain saw. Defendant was seen repeatedly bending from the waist, pulling up tree branches, and stuffing them into a trash can. She then dragged the trash can on the ground to the side yard. The trash can did not appear to have wheels. Defendant continued to bend to pick up branches. She then carried them to the side yard. Defendant was not using a cane for assistance. Defendant was also seen pulling out ivy plant material from the ground and

stuffing it into a trash container. She also broke small branches with both hands, bent from the waist down to pull weeds or flowers from the ground, dug into the ground with a small trowel, used her foot to press down the dirt, and squatted to pick up trash from the ivy. Defendant was also observed to pull branches down from the tree as they were cut. Defendant threw the branches with an overhand motion and pulled the cord of the chain saw. The videotape ended at 2:09 p.m.

Defendant was deposed under oath on April 28, 1998, in connection with her request to reopen her workers' compensation claim. The deposition was transcribed by a certified shorthand reporter. Sonja Gipson was the attorney for Methodist Hospital conducting the deposition. Defendant was asked about her current complaint. Defendant indicated that she had low-back, neck, shoulders, and right hip pain. Defendant stated that her little toe no longer bothered her. Defendant testified the pain to her lower back was severe and constant. She stated "not too much of anything" relieved the pain. When asked if she uses her cane at all times, defendant testified she did not use it around the house and there were times when she did "limited" activities where she did not use it. Defendant related she could not walk for an hour straight. She also indicated under oath, she could only do things on her feet for a half hour without requiring rest because of increased symptoms to her back.

Defendant was asked if there was anything she was able to do prior to May 28, 1997, that she could no longer accomplish because of increased back pain. Defendant responded, "With the increased back pain I am not able to do things like going to the garden and, you know, pull weeds and doing that." When the question was clarified, she modified her answer to state that before the award in 1997: "I did some, you know, light gardening. I didn't go out and do anything vigorous or anything . . . ." However, she stated that at the time of the deposition she could not even do that because her back pain was more severe. Defendant testified, "My back is so stiff and I have such severe pain in it." Defendant said the pain in her hip, neck, and right shoulder had also become worse. Defendant said she did very little housework and no gardening. A transcript of the foregoing deposition was received in evidence as exhibit 5. It is not executed by defendant.

On September 4, 1998, defendant was videotaped manually raising her garage door. Defendant drove her car out of the garage. She got out of her car and closed the garage door. Defendant was not using a cane. Defendant then walked fast to avoid some sprinklers. She walked up the two stairs to her residence. Later, the tape pictured defendant turning on sprinklers and

carrying two empty trash cans simultaneously to the side of the house. She also bent down to pick up some debris. Defendant also unwound the garden hose, bent over to pick it up, and watered trees and shrubs. In each instance, she was not utilizing a cane. Defendant then washed the car, reaching to wipe or clean with her right arm, and bending to reach the lower part of the car.

## B. *Verdicts*

Defendant was convicted of perjury in counts 2 and 3. The verdict form for count 2 states in the relevant part: "We, the jury, in the above entitled action, find the defendant . . . GUILTY of the crime of PERJURY UNDER OATH as charged in Count 2 of the Information, in violation of Penal Code Section 118, a Felony . . . having taken an oath . . . did contrary to such oath state as true a material matter which she knew to be false, to wit: [¶] Question: 'Is there anything that you did prior to the award of May 28, 1997, that you are unable to do now because of an increase in your back pain? Answer: 'Yes, with the increased back pain, I'm not able to do things like going to the garden and, you know, pull weeds and doing that or—.' [¶] Question: 'But were you doing that within the last year though, Betty? She's not talking within the time you injured yourself in '92, what you did before then, okay? She's talking about when you signed the award, it was let's say, May of '97. So it was about a year ago. Within that year until today, are there things you can't do now because of your increased pain? Were you doing gardening up until May of '97?' Answer: 'No, I don't.' [¶] Question: 'Up until May of 1997, you had a certain level of pain and disability?' Answer: 'Uh-huh.' Question: 'Okay, and that case settled?' Answer: 'Uh-huh.' [¶] Question: 'Since then, you stated that you have had an increased level of pain and disability. Is there anything that you cannot do now that you were doing prior to May of '97?' Well, right at around May of '97?' 'Yes, in that area.' 'Like last year at this time, if you think back, were you able to walk further distances or were you able to do some gardening? Did you go grocery shopping or did you go to the mall?' Answer: 'I did some, you know, like gardening, I didn't go out and do anything vigorous or anything but . . .' [¶] Question: 'That was before the award?' Answer: 'That was before.' Question: 'And now you can't even do that?' Answer: 'No. My back is so stiff, and I have such sever[e] pain in it.' "

The count 3 guilty verdict states in pertinent part: "We, the jury, in the above entitled action, find the defendant . . . GUILTY, of the crime of PERJURY UNDER OATH as charged in Count 3 of the Information, in violation of Penal Code Section 118, a Felony, who being a person having taken

an oath . . . did contrary to such oath state as true a material fact which she knew to be false, to wit: [¶] Question: 'You say you don't do any gardening?' Answer: 'No.' "

## III. Discussion

### A. *Sufficiency of the Evidence Standard of Review*

■ Defendant argues that there was insufficient evidence to support the verdicts. In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319 [99 S.Ct. at p. 2789]; *People v. Osband, supra,* 13 Cal.4th at p. 690; *Taylor v. Stainer, supra,* 31 F.3d at pp. 908-909.) Our sole function is to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia, supra,* 443 U.S. at p. 319 [99 S.Ct. at p. 2789]; *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *People v. Marshall* (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) The Supreme Court has held, "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin, supra,* 18 Cal.4th at p. 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

### B. *Workers' Compensation Insurance Fraud*

■ Insurance Code section 1871.4 provides in pertinent part: "(a) It is unlawful to do any of the following: [¶] (1) Make or cause to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining . . . any compensation, as defined in Section 3207 of the Labor Code." (See also *People v. Webb* (1999) 74 Cal.App.4th 688, 691, fn. 1, 693 [88 Cal.Rptr.2d 259]; *People v. Gillard* (1997) 57 Cal.App.4th 136, 153-154 [66 Cal.Rptr.2d 790].) In this case, defendant made both false material statements and misrepresentations regarding her physical condition as it related to her renewed claim. Although defendant used a cane and walked with difficulty when visiting the doctor and the Workers' Compensation Appeals Board, videotapes taken surreptitiously by investigators showed her walking in a normal gait without the aid of any type of a walking stick while performing various physical tasks. In addition, defendant testified under oath at her deposition that she was unable to

perform such vigorous activities as gardening, housework, lifting, and pulling due to severe back and neck pain. Defendant testified that she basically stayed in the house on a recliner or the couch, noting, "I've kind of become a couch potato." As our colleagues in Division Six of the Court of Appeal for the Second Appellate District noted in *People v. Webb, supra,* 74 Cal.App.4th at page 690, "If a picture is worth a thousand words, a moving picture is worth a million." The videotapes depict defendant lifting multiple grocery bags; bending to place items in the car; pulling tree branches and stuffing them into a trash container; dragging heavy trash containers; reaching while washing the car; bending while pulling weeds; uncoiling and coiling hoses; and walking without difficulty or assistance. We agree with the Attorney General that the jurors could have reasonably found the essential elements of the crime of workers' compensation insurance fraud beyond a reasonable doubt. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319 [99 S.Ct. at p. 2789]; *People v. Bolin, supra,* 18 Cal.4th at p. 331.)

## C. *Perjury*

▆▆▆ Defendant argues that her perjury convictions must be set aside because there is no substantial evidence she ever executed her deposition transcript. As will be noted, she did not execute the transcript introduced in evidence during her trial. As a result, she may not be convicted of perjury. But she may be convicted of attempted perjury.

When originally adopted in 1850, California's perjury statute made no specific reference to deposition testimony. (Stats. 1850, ch. 99, § 82, p. 239.)[2] Between 1850 and the codification of the Penal Code in 1872, California's criminal perjury statute remained unchanged. In 1870, the California Code Commission was appointed to draft a complete system of laws for presentation to the Legislature. (See Stats. 1869-1870, ch. 516, § 2, p. 774; Keeler v. Superior Court (1970) 2 Cal.3d 619, 629 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 660 [59 Cal.Rptr.2d 254].) When the Penal Code was codified in 1872, Penal Code section 124 was added, which stated, "The making of a deposition or certificate is deemed to be complete, within the

---

[2]As originally adopted, section 82 of "An Act concerning Crimes and Punishment" stated, "Every person having taken a lawful oath, or made affirmation in any judicial proceeding, or any other matter where by law an oath or affirmation is required, who shall swear or affirm wilfully, corruptly, and falsely, in a matter material to the issue or point in question, or shall suborn any other person to swear or affirm as aforesaid, shall be deemed guilty of perjury or subordination of perjury (as the case may be), and upon conviction thereof shall be punished by imprisonment in the State Prison for any term not less than one nor more than fourteen years." (Stats. 1850, ch. 99, § 82, p. 239.)

provisions of this Chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true." At the same time of the codification of the Penal Code in 1872, the Code of Civil Procedure was enacted. New Code of Civil Procedure section 2031 allowed for the taking of depositions before a "Judge or officer authorized to administer oaths . . . ."[3] (See *Burns v. Superior Court* (1903) 140 Cal. 1, 8-9 [73 P. 597].) The 1872 Code of Civil Procedure prescribed a specific procedure to be followed when the deposition was completed. The new provisions of Code of Civil Procedure section 2032 stated: "Either party may attend the examination and put such questions, direct and cross, as may be proper. The deposition, when completed, must be carefully read to the witness and corrected by him in any particular, if desired; *it must then be subscribed by the witness,* certified by the Judge or officer taking the deposition, inclosed in an envelop or wrapper, sealed, and directed to the Clerk of the Court in which the action is pending, or to such person as the parties in writing may agree upon, and either delivered by the Judge or the officer to the Clerk or such person, or transmitted through the mail or by some safe private opportunity . . . ." (Italics added.) There can be no question that when Penal Code section 124 was adopted in 1872, one of the requirements for completing a deposition was that it be executed by the deponent.

In 1905, Penal Code section 124 was amended to read as it does now, "The making of a deposition, affidavit or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true." (Stats. 1905, ch. 485, § 4, p. 648.) The code commissioner's notes for the 1905 amendment state, "The change [by the 1905 amendment] consists in the addition of the [word] 'affidavit.' The purpose is of the same character as that of the amendment to the preceding section." (Code commrs. notes, 47 West's Ann. Pen. Code (1999 ed.) foll. § 124, p. 265.) When the 1905 amendment to Penal Code section 124 was adopted, Code of Civil Procedure section 2032 with its specific requirement that the

---

[3] As adopted in 1872, Code of Civil Procedure section 2031 stated: "Either party may have the deposition taken of a witness in this State, in either of the cases mentioned in Section 2021, before a Judge or officer authorized to administer oaths, on serving upon the adverse party previous notice of the time and place of examination, together with a copy of an affidavit, showing that the case is within that section. Such notice must be at least five days, adding also one day for every twenty-five miles of the distance of the place of examination from the residence of the person to whom the notice is given, unless, for a cause shown, a Judge, by order, prescribe a shorter time. When a shorter time is prescribed, a copy of the order must be served with the notice."

deposition be signed before delivery remained in the same form as in 1872. Penal Code section 124 has not been amended since 1905. Simply stated, when Penal Code section 124 was last amended by the Legislature, the crime of perjury could not be committed at a deposition unless the deponent had signed the transcript.

Since 1905, when Penal Code section 124 was last amended, there have been extensive legislative amendments concerning depositions. There is no evidence the Legislature, in adopting amendments to the Code of Civil Procedure, intended to alter the 1872 and 1905 statutory requirement that the crime of perjury could not be committed unless the deponent executed the deposition transcript. Code of Civil Procedure section 2032, which was adopted in 1872 and set forth specific procedures for completing the deposition process, was amended in 1929. (Stats. 1929, ch. 474, § 2, p. 835.) The 1929 amendments did not materially alter the signature requirement.[4] (See *Voorheis v. Hawthorne-Michaels Co.* (1957) 151 Cal.App.2d 688, 693 [312 P.2d 51].) The strict statutory procedures for completing the deposition with the signature of the deponent were relaxed with the repeal of the 1929 version of Code of Civil Procedure section 2032, upon the adoption of the Civil Discovery Act of 1957. (Stats. 1957, ch. 1904, §§ 1-2, pp. 3321-3322; see *People v. Hjelm* (1964) 224 Cal.App.2d 649, 655 [37 Cal.Rptr. 36].) Similarly, the Civil Discovery Act of 1986, as amended, now provides for even more flexible procedures for completing the deposition process. (Code Civ. Proc., § 2025, subd. (q); Stats. 1999, ch. 892, § 13; Stats. 1987, ch. 86, § 8, pp. 317-318; Stats. 1986, ch. 1334, § 2, p. 4717.)[5]

---

[4]Code of Civil Procedure section 2032, as adopted in 1929, stated in pertinent part: "Either party may attend the examination and put such questions direct and cross, as may be proper. The deposition, when completed, must be carefully read to the witness and corrected by him in any particular if desired; it must then be subscribed by the witness, certified by the judge or officer taking the deposition, but if certified to by an officer authorized to administer oaths, the certification must show that such officer and the person, if any, appointed by him to take the testimony of the witness, possess the qualifications set forth in section 2006; it must then be inclosed in an envelope or wrapper, sealed, and directed to the clerk of the court in which the action is pending or to such person as the parties in writing may agree upon, and either delivered by the judge or officer to the clerk or such person, or transmitted through the mail or by some safe private opportunity . . . ." (Stats. 1929, ch. 474, § 2, p. 835.)

[5]Code of Civil Procedure section 2025, subdivision (q) currently states in relevant part: "(q)(1) If the deposition testimony is stenographically recorded, the deposition officer shall send written notice to the deponent and to all parties attending the deposition when the original transcript of the testimony for each session of the deposition is available for reading, correcting, and signing, unless the deponent and the attending parties agree on the record that the reading, correcting, and signing of the transcript of the testimony will be waived or that the reading, correcting, and signing of a transcript of the testimony will take place after the entire deposition has been concluded or at some other specific time. For 30 days following each such notice, unless the attending parties and the deponent agree on the record or

The Attorney General argues that there is no longer an absolute signature requirement in the *Code of Civil Procedure* that the deponent actually execute the deposition transcript. The problem with this contention though is that the Legislature has never indicated in any of these amendments to the Code of Civil Procedure that it was altering its section 124 signature requirement first adopted in 1872 and reiterated in 1905 which required the deposition be executed before the crime of perjury could be committed. We have carefully examined the available legislative intent documents for the Code of Civil Procedure amendments to the deposition statutes since 1905 and there is no evidence the Legislature intended to delete its section 124 delivery and signature requirement for purposes of perjury liability. Hence, without an executed deposition transcript, defendant could not be convicted of the completed offense of perjury. (*Collins v. Superior Court* (2001) 89

---

otherwise in writing to a longer or shorter time period, the deponent may change the form or the substance of the answer to a question, and may either approve the transcript of the deposition by signing it, or refuse to approve the transcript by not signing it. [¶] Alternatively, within this same period, the deponent may change the form or the substance of the answer to any question and may approve or refuse to approve the transcript by means of a letter to the deposition officer *signed by the deponent which is mailed by certified or registered mail with* return receipt requested. A copy of that letter shall be sent by first-class mail to all parties attending the deposition. For good cause shown, the court may shorten the 30-day period for making changes, approving, or refusing to approve the transcript. [¶] The deposition officer shall indicate on the original of the transcript, if the deponent has not already done so at the office of the deposition officer, any action taken by the deponent and indicate on the original of the transcript, the deponent's approval of, or failure or refusal to approve, the transcript. The deposition officer shall also notify in writing the parties attending the deposition of any changes which the deponent timely made in person. If the deponent fails or refuses to approve the transcript within the allotted period, the deposition shall be given the same effect as though it had been approved, subject to any changes timely made by the deponent. However, on a seasonable motion to suppress the deposition, accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion, the court may determine that the reasons given for the failure or refusal to approve the transcript require rejection of the deposition in whole or in part. [¶] . . . [¶] (2) If there is no stenographic transcription of the deposition, the deposition officer shall send written notice to the deponent and to all parties attending the deposition that the recording is available for review, unless the deponent and all these parties agree on the record to waive the hearing or viewing of an audiotape or videotape recording of the testimony. For 30 days following this notice the deponent, either in person or by signed letter to the deposition officer, may change the substance of the answer to any question. [¶] The deposition officer *shall set forth in a writing to accompany the recording any changes made by the deponent,* as well as either the deponent's signature identifying the deposition as his or her own, or a statement of the deponent's failure to supply the signature, or to contact the officer within the allotted period. When a deponent fails to contact the officer within the allotted period, or expressly refuses by a signature to identify the deposition as his or her own, the deposition shall be given the same effect as though signed. However, on a [s]easonable motion to suppress the deposition, accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion, the court may determine that the reasons given for the refusal to sign require rejection of the deposition in whole or in part."

Cal.App.4th 1244, 1247-1250 [108 Cal.Rptr.2d 123]; *People v. Hjelm, supra*, 224 Cal.App.2d at pp. 654-659.)

The jury had before it exhibit 5 which was a certified copy of defendant's April 28, 1998 deposition. Exhibit 5 is not executed by defendant. We do note that exhibit 4, which was admitted at the preliminary examination in the former Municipal Court for the Los Angeles Judicial District, is a photocopy of the original deposition transcript. Defendant executed exhibit 4, which was received in evidence at the preliminary examination. However, preliminary hearing exhibit 4 was never received in evidence in defendant's trial. In evaluating the sufficiency of the evidence, we may only evaluate those matters which were actually presented to the jury; after all, it was the jurors who were charged with returning verdicts. Because the only deposition transcript that was submitted to the jury was exhibit 5, which was not signed by defendant, the evidence is insufficient to support the counts 2 and 3 perjury verdicts.

However, we asked the parties to address the issue of whether a lesser-included offense, attempted perjury, has been committed. The Attorney General contends that defendant may be held criminally liable for the offense of attempted perjury. Section 664, subdivision (a), states in pertinent part: "Every person who attempts to commit *any crime*, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows: [¶] (a) If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted." (Italics added.) ■ In *People v. Toledo* (2001) 26 Cal.4th 221, 229-230 [109 Cal.Rptr.2d 315, 26 P.3d 1051], Chief Justice Ronald M. George summarized California law concerning the law of attempt to commit a crime as follows, in part: "[U]nder California law, '[a]n attempt to commit a crime is itself a crime and [is] subject to punishment that bears some relation to the completed offense.' (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 53, p. 262 . . . .) [¶] Furthermore, as provided by section 21a, '[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' As past decisions explain: 'One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime.' *(People v.*

*Camodeca* (1959) 52 Cal.2d 142, 147 [338 P.2d 903].) When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime (2 LaFave & Scott, Substantive Criminal Law (1986) § 6.2(c)(1), p. 24), and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' (*People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169]), the defendant may be convicted of criminal attempt." (Fn. omitted.)

 As noted, section 664, subdivision (a) applies to "any crime." The only exception to the "any crime" language in section 664, subdivision (a) involves offenses which must be committed unintentionally. (E.g., *People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332 [59 Cal.Rptr.2d 798] [because involuntary manslaughter is an *unintentional* killing, there is no crime of " 'attempted involuntary manslaughter' "]; *In re Kent W.* (1986) 181 Cal.App.3d 721, 723-724 [226 Cal.Rptr. 512] [unlawfully setting a fire in violation of § 452 requires an *unintentional* burning and therefore the crime of attempt, with its specific intent element, of that form of arson cannot be committed].) Perjury does not fall within this exception to the plain language of section 664, subdivision (a). Perjury is a specific intent crime. (*People v. Meza* (1987) 188 Cal.App.3d 1631, 1647 [234 Cal.Rptr. 235]; *People v. Story* (1985) 168 Cal.App.3d 849, 853 [216 Cal.Rptr. 158]; see *People v. Hagen* (1998) 19 Cal.4th 652, 664 [80 Cal.Rptr.2d 24, 967 P.2d 563]; *People v. Campbell* (1999) 76 Cal.App.4th 305, 309 [90 Cal.Rptr.2d 315].)

Apart from these narrow exceptions, the broad language "any offense" in section 664 had been recognized as applying to a variety of uncompleted crimes. For example, California recognizes the existence of the crime of attempted subornation of perjury. (*People v. Meaders* (1983) 148 Cal.App.3d 1155, 1159 [197 Cal.Rptr. 1] ["the general attempt statute, Penal Code section 664, is a viable and legitimate tool for the protection of the People of this state from subornation of perjury in its inchoate stage"].) Also, section 664 has been applied to a variety of offenses where, at first thought, it might seem that an attempt to commit the crime is not a cognizable offense. (*People v. Toledo, supra,* 26 Cal.4th at p. 235 [attempted criminal threat]; *People v. Downer* (1962) 57 Cal.2d 800, 806 [22 Cal.Rptr. 347, 372 P.2d 107] [attempted incest]; *People v. Anderson* (1961) 55 Cal.2d 655, 661-662 [12 Cal.Rptr. 500, 361 P.2d 32] [attempted theft by fraud, trick, or device]; *People v. Camodeca, supra,* 52 Cal.2d at p. 147 [attempted extortion]; *People v. Milne* (1882) 60 Cal. 71, 72 [attempted child stealing in violation of § 278]; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1384 [112 Cal.Rptr.2d 620] ["*attempt* to violate section 401 by deliberately aiding, advising and

encouraging another person to commit suicide"]; *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1626-1627 [47 Cal.Rptr.2d 769] [attempted injury upon a cohabitant in violation of §§ 273.5, subd. (a) and 664]; *People v. Imler* (1992) 9 Cal.App.4th 1178, 1182 [11 Cal.Rptr.2d 915] [attempted child molestation]; *People v. Meyer* (1985) 169 Cal.App.3d 496, 501-506 [215 Cal.Rptr. 352] [attempted sale of methylamine]; *People v. Siu* (1954) 126 Cal.App.2d 41, 43-44 [271 P.2d 575] [attempted heroin possession]; *People v. Garcia* (1989) 214 Cal.App.3d Supp. 1, 3-5 [262 Cal.Rptr. 915] [attempted driving under the influence of alcohol]; *People v. Wright* (1980) 105 Cal.App.3d 329, 331-332 [164 Cal.Rptr. 207] [attempted receiving stolen property]; *People v. Lorenzo* (1976) 64 Cal.App.3d Supp. 43, 47 [135 Cal.Rptr. 337] [attempted theft by false pretenses].) Therefore, under California law, the crime of attempted perjury can be committed. (See Note, *Criminal Law: Attempted Perjury Is a Crime* (1955) 6 Hastings L.J. 386.)

Other jurisdictions recognize in varying circumstances the existence of the crime of attempted perjury. (See *State of La. ex rel. Gwin v. Dees* (5th Cir. 1969) 410 F.2d 321, 324 [Louisiana]; *Miscovsky v. State* (2001) 2001 Okla. 26 [31 P.3d 1054), 1058 [Oklahoma]; *Commonwealth v. D'Amour* (1999) 428 Mass. 725 [704 N.E.2d 1166, 1170] [Massachusetts]; *State v. Cooks* (1997) 125 Ohio App.3d 116 [707 N.E.2d 1176, 1177] [Ohio]; *People v. Hudson* (1997) 237 A.D.2d 759 [655 N.Y.S.2d 142] [New York]; *State v. Hyde* (1977) 28 Or.App. 809 [561 P.2d 659, 661] [Oregon].) Only one state, Florida, has refused to recognize that the crime of attempted perjury can be committed. (*Adams v. Murphy* (Fla. 1981) 394 So.2d 411, 414-415 (plur. opn. of Boyd, J.).) The Florida Supreme Court reasoned that the crime of perjury was complete once the false statement was uttered. The court held: "The lack of such elements of the crime of perjury as the materiality of the testimony, the lawfulness of the oath, or the official judicial nature of the proceeding is not, we think, what is contemplated by the common law and statutory concepts of failure, intervention, interception or prevention. When the elements of materiality, lawful oath, and official judicial proceeding are established, the crime of perjury is fully proven by an 'attempt' to commit perjury. That is, it is fully proven by the overt act of a willful false statement." (*Ibid.*) California law differs. In California, the crime of perjury by a deponent, such as defendant, is not committed unless the deposition transcript is signed and delivered. For the reasons previously expressed, we respectfully conclude the views of the Florida Supreme Court, which were construing statutory perjury requirements different from those in California which apply specifically to deposition transcripts, are not controlling. We express no opinion as to the remainder of the Florida Supreme Court plurality's analysis in *Adams*.

Accordingly, defendant cannot not be convicted of perjury as charged in counts 2 and 3. Rather, the offense she committed in counts 2 and 3 was attempted perjury. We have the authority to reduce the judgment as to counts 2 and 3 to state that defendant has been convicted of attempted perjury. Penal Code section 1260 provides in part, "The court may . . . modify a judgment appealed from, or reduce the degree of the offense or attempted offense . . . ." Penal Code section 1260 has been interpreted to allow an appellate court to reduce a judgment of a completed crime to a lesser-included attempted offense. (*People v. Rojas* (1961) 55 Cal.2d 252, 261-262 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252] [receiving stolen property conviction reduced to lesser included offense of attempted receiving stolen property]; *People v. Jones* (1999) 75 Cal.App.4th 616, 626-628 [89 Cal.Rptr.2d 485] [carjacking conviction reduced to lesser included offense of attempted carjacking].) In the present case, the evidence before the jury did not prove defendant signed her deposition transcript which reflected her obviously false statements. Her testimony at the deposition concerning her alleged injuries was demonstrably untrue as evidenced by the videotapes. Defendant had a motive to lie—she was seeking to receive more workers compensation benefits. The deposition provisions of the Code of Civil Procedure apply in workers' compensation proceedings. (Lab. Code, § 5710, subd. (a); 2 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2001) § 14.74, p. 893.) There was testimony, independent of the deposition transcript, of defendant's false statements made after she swore to tell the truth. No evidence was introduced by the defense to suggest any mistake of fact or confusion on defendant's part at her deposition. This is an appropriate case to reduce defendant's convictions under counts 2 and 3 to attempted perjury. (Pen. Code, §§ 118, 664, subd. (a).)

One final thought is in order. As noted in the first paragraph of this opinion, the requirement that a deponent sign and deliver the deposition transcript, which finds its basis in statutory law first adopted in 1872, over 129 years ago, warrants reevaluation by the California Legislature. In federal courts, the crime of perjury as defined in title 18 United States Code section 1621, is complete once a materially false statement is spoken at a deposition and there is no requirement the transcript be executed by the deponent. (*U.S. v. Markiewicz* (2d Cir. 1992) 978 F.2d 786, 808; see *United States v. Noveck* (1927) 273 U.S. 202, 206 [47 S.Ct. 341, 341-342, 71 L.Ed. 610]; *Hale v. United States* (10th Cir. 1969) 406 F.2d 476, 479-480.) Truth must be the heart and soul of California's justice system. Without truth, there is no justice, none at all. Whatever purposes have been served by the century-old Penal Code section 124 signature and delivery requirements, they are now far outweighed by the morally impelled unrelenting demand for the whole

truth and nothing but the truth from witnesses. Conscientious revaluation of the over-129-year-old Penal Code section 124 signature and delivery requirements should be at hand by our Governor and our legislators.

D., E.*

. . . . . . . . . . . . . . . . . . . . . .

IV. Disposition

The judgment is modified to reduce defendant's convictions under counts 2 and 3 to attempted perjury. The judgment is affirmed in all other respects.

Grignon, J., and Willhite, J.,† concurred.

A petition for a rehearing was denied January 2, 2002, and the petitions of both appellant and respondent for review by the Supreme Court were denied February 20, 2002.

---

*See footnote, *ante*, page 467.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.